# DOWLING *v.* UNITED STATES

No. 88–6025.　Argued October 4, 1989—Decided January 10, 1990

WHITE, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BLACKMUN, O'CONNOR, SCALIA, and KENNEDY, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which MARSHALL and STEVENS, JJ., joined, *post*, p. 354.

*Robert L. Tucker* argued the cause and filed briefs for petitioner.

*Stephen L. Nightingale* argued the cause for the United States. With him on the brief were *Solicitor General Starr, Assistant Attorney General Dennis, Deputy Solicitor General Bryson,* and *Joseph C. Wyderko.*\*

JUSTICE WHITE delivered the opinion of the Court.

At petitioner's trial for various offenses arising out of a bank robbery, testimony was admitted under Rule 404(b) of the Federal Rules of Evidence, relating to an alleged crime

---

\**Steven E. M. Hartz* filed a brief for the National Association of Criminal Lawyers as *amicus curiae* urging reversal.

that the defendant had previously been acquitted of committing. We conclude that neither the Double Jeopardy Clause nor the Due Process Clause barred the use of this testimony.

## I

On the afternoon of July 8, 1985, a man wearing a ski mask and armed with a small pistol robbed the First Pennsylvania Bank in Frederiksted, St. Croix, Virgin Islands, taking over $7,000 in cash from a bank teller, approximately $5,000 in cash from a customer, and various personal and travelers' checks. The culprit ran from the bank, scurried around in the street momentarily, and then commandeered a passing taxi van. While driving away from the scene, the robber pulled off his ski mask. An eyewitness, who had slipped out of the bank while the robbery was taking place, saw the maskless man and at trial identified him as petitioner, Reuben Dowling. Other witnesses testified that they had seen Dowling driving the hijacked taxi van outside of Frederiksted shortly after the bank robbery.

Following his arrest, Dowling was charged with the federal crimes of bank robbery, 18 U. S. C. § 2113(a), and armed robbery, § 2113(d), and with various crimes under Virgin Islands law. Dowling pleaded not guilty to all charges. Dowling's first trial ended with a hung jury. He was tried again and convicted, but the Third Circuit reversed this conviction on appeal. *Government of Virgin Islands* v. *Dowling*, 814 F. 2d 134 (1987). After a third trial, Dowling was convicted on most of the counts; the trial judge sentenced him to 70 years' imprisonment.

During petitioner's third trial, the Government, over petitioner's objection, called a woman named Vena Henry to the stand. Ms. Henry testified that a man wearing a knitted mask with cutout eyes and carrying a small handgun had, together with a man named Delroy Christian, entered her home in Frederiksted approximately two weeks after the First Pennsylvania Bank robbery. Ms. Henry testified that

a struggle ensued and that she unmasked the intruder, whom she identified as Dowling. Based on this incident, Dowling had been charged under Virgin Islands law with burglary, attempted robbery, assault, and weapons offenses, but had been acquitted after a trial held before his third trial in the bank robbery case.

The Government assertedly elicited Henry's testimony for two purposes. First, it believed that Henry's description of Dowling as wearing a mask and carrying a gun similar to the mask worn and the gun carried by the robber of the First Pennsylvania Bank strengthened the Government's identification of Dowling as the bank robber. Second, the Government sought to link Dowling with Delroy Christian, the other man who entered Henry's home. The day before the bank robbery, Dowling had borrowed a white Volkswagen from a friend. At Dowling's trial for the First Pennsylvania Bank robbery, a police officer testified that, shortly before the bank robbery, she and her partner had come upon Christian and another man parked in a white Volkswagen in front of the bank with the car door open into the street; Christian was in the backseat. The officers told the two men to close the door, and the men drove away to the north. The police followed the Volkswagen for about a mile and, shortly thereafter, received a radio message that the bank had been robbed. The Government's theory was that Christian and his friend were to drive the getaway car after Dowling robbed the bank.

Before opening statements, the Government disclosed its intention to call Ms. Henry and explained its rationale for doing so, relying on Rule 404(b) of the Federal Rules of Evidence, which provides that evidence of other crimes, wrongs, or acts may be admissible against a defendant for purposes other than character evidence. After a hearing, the District Court characterized the testimony as highly probative circumstantial evidence and ruled that it was admissible under Rule 404(b). App. 24–25. When Henry left the stand, the

District Court instructed the jury that petitioner had been acquitted of robbing Henry, and emphasized the limited purpose for which Henry's testimony was being offered. *Id.*, at 28. The court reiterated that admonition in its final charge to the jury. *Id.*, at 29.

On appeal, the Third Circuit determined that the District Court should not have admitted Henry's testimony, but nevertheless affirmed Dowling's conviction. 855 F. 2d 114 (1988). Relying on its decision in *United States* v. *Keller,* 624 F. 2d 1154 (1980), the court held that petitioner's acquittal of the charges arising out of the incident at Henry's home collaterally estopped the Government from offering evidence of that incident at petitioner's trial for the First Pennsylvania Bank robbery.

Alternatively, the Court of Appeals ruled that the evidence was inadmissible under the Federal Rules of Evidence. The court noted that we had recently held in *Huddleston* v. *United States,* 485 U. S. 681 (1988), that "[i]n the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Id.*, at 689. The Third Circuit found Henry's testimony inadmissible under Rule 404(b) because "when the prior act sought to be introduced was the subject of an acquittal by a jury, a second jury should not be permitted to conclude 'that the act occurred and that the defendant was the actor.'" 855 F. 2d, at 122. The court also relied on Rule 403 of the Federal Rules of Evidence because, in the Third Circuit's opinion, the danger of unfair prejudice outweighed the probative value of Henry's testimony. 855 F. 2d, at 122.

The Third Circuit, however, held that the admission of Henry's testimony was harmless because it was highly probable that the error did not prejudice the petitioner. *Id.*, at 122–124. The Court of Appeals explicitly declined to apply the more stringent standard, see *Chapman* v. *California,* 386 U. S. 18, 24 (1967), applicable to constitutional errors be-

cause, according to the court, the District Court's mistake was merely evidentiary and not of constitutional dimension. 855 F. 2d, at 122–123. Having rejected petitioner's other objections, the court affirmed the conviction. *Id.*, at 124.

Dowling claims that the Third Circuit was wrong when it found that the admission of Henry's testimony did not offend the Constitution and therefore declined to apply the *Chapman* v. *California, supra*, harmless-error standard.[1] We granted certiorari to consider Dowling's contention that Henry's testimony was inadmissible under both the Double Jeopardy and the Due Process Clauses of the Fifth Amendment. 489 U. S. 1051 (1989).

## II

### A

There is no claim here that the acquittal in the case involving Ms. Henry barred further prosecution in the present case. The issue is the inadmissibility of Henry's testimony.

In *Ashe* v. *Swenson*, 397 U. S. 436 (1970), we recognized that the Double Jeopardy Clause incorporates the doctrine of collateral estoppel. In that case, a group of masked men had robbed six men playing poker in the basement of a home. The State unsuccessfully prosecuted Ashe for robbing one of the men. Six weeks later, however, the defendant was convicted for the robbery of one of the other players. Applying the doctrine of collateral estoppel which we found implicit in the Double Jeopardy Clause, we reversed Ashe's conviction, holding that his acquittal in the first trial precluded the State from charging him for the second offense. *Id.*, at 445–446. We defined the collateral-estoppel doctrine as providing that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.*, at 443. Ashe's acquittal in the first trial foreclosed the

---

[1] Dowling does not challenge the holding that the error was harmless under the less strict standard applied by the Court of Appeals.

second trial because, in the circumstances of that case, the acquittal verdict could only have meant that the jury was unable to conclude beyond a reasonable doubt that the defendant was one of the bandits. A second prosecution was impermissible because, to have convicted the defendant in the second trial, the second jury had to have reached a directly contrary conclusion. See *id.*, at 445.

Dowling contends that, by the same principle, his prior acquittal precluded the Government from introducing into evidence Henry's testimony at the third trial in the bank robbery case. We disagree because, unlike the situation in *Ashe* v. *Swenson,* the prior acquittal did not determine an ultimate issue in the present case. This much Dowling concedes, and we decline to extend *Ashe* v. *Swenson* and the collateral-estoppel component of the Double Jeopardy Clause to exclude in all circumstances, as Dowling would have it, relevant and probative evidence that is otherwise admissible under the Rules of Evidence simply because it relates to alleged criminal conduct for which a defendant has been acquitted.

For present purposes, we assume for the sake of argument that Dowling's acquittal established that there was a reasonable doubt as to whether Dowling was the masked man who entered Vena Henry's home with Delroy Christian two weeks after the First Pennsylvania Bank robbery.[2] But to introduce evidence on this point at the bank robbery trial, the Government did not have to demonstrate that Dowling was the man who entered the home beyond a reasonable doubt: the Government sought to introduce Henry's testimony under Rule 404(b), and, as mentioned earlier, in *Huddleston* v. *United States, supra,* at 689, we held that "[i]n the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." Because a jury might

---

[2] It is not clear from the record that this finding formed the basis for the jury's verdict. See the discussion *infra,* at Part II–B.

reasonably conclude that Dowling was the masked man who entered Henry's home, even if it did not believe beyond a reasonable doubt that Dowling committed the crimes charged at the first trial, the collateral-estoppel component of the Double Jeopardy Clause is inapposite.

Our decision is consistent with other cases where we have held that an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof. In *United States* v. *One Assortment of 89 Firearms*, 465 U. S. 354 (1984), for example, we unanimously agreed that a gun owner's acquittal on a charge of dealing firearms without a license did not preclude a subsequent *in rem* forfeiture proceeding against those firearms, even though forfeiture was only appropriate if the jury in the forfeiture proceeding concluded that the defendant had committed the underlying offense. Because the forfeiture action was a civil proceeding, we rejected the defendant's contention that the Government was estopped from relitigating the issue of the defendant's alleged wrongdoing:

> "[The acquittal did] not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt. . . . [T]he jury verdict in the criminal action did not negate the possibility that a preponderance of the evidence could show that [the defendant] was engaged in an unlicensed firearms business. . . . It is clear that the difference in the relative burdens of proof in the criminal and civil actions precludes the application of the doctrine of collateral estoppel." *Id.*, at 361–362.

In *One Lot Emerald Cut Stones* v. *United States*, 409 U. S. 232, 235 (1972), it was also held that the Double Jeopardy Clause did not bar a forfeiture action subsequent to acquittal on the underlying offense because "the difference in the burden of proof in criminal and civil cases precludes application of the doctrine of collateral estoppel." *Helvering* v. *Mitch-*

*ell*, 303 U. S. 391, 397 (1938), likewise observed that "[t]he difference in degree in the burden of proof in criminal and civil cases precludes application of the doctrine of *res judicata*."

We thus cannot agree that the Government was constitutionally barred from using Henry's testimony at the bank robbery trial, and for the same reasons we find no merit in the Third Circuit's holding that the common-law doctrine of collateral estoppel in all circumstances bars the later use of evidence relating to prior conduct which the Government failed to prove violated a criminal law.

### B

Even if we agreed with petitioner that the lower burden of proof at the second proceeding does not serve to avoid the collateral-estoppel component of the Double Jeopardy Clause, we agree with the Government that the challenged evidence was nevertheless admissible because Dowling did not demonstrate that his acquittal in his first trial represented a jury determination that he was not one of the men who entered Ms. Henry's home. In *Ashe* v. *Swenson*, we stated that where a previous judgment of acquittal was based on a general verdict, courts must "'examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict on an issue other than that which the defendant seeks to foreclose from consideration.'" 397 U. S., at 444 (citation omitted). The Courts of Appeals have unanimously placed the burden on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding. *United States* v. *Citron*, 853 F. 2d 1055, 1058 (CA2 1988); *United States* v. *Ragins*, 840 F. 2d 1184, 1194 (CA4 1988); *United States* v. *Gentile*, 816 F. 2d 1157, 1162 (CA7 1987); *United States* v. *Baugus*, 761 F. 2d 506, 508 (CA8 1985); *United States* v. *Mock*, 640 F. 2d 629, 631, n. 1 (CA5

1981); *United States* v. *Hewitt*, 663 F. 2d 1381, 1387 (CA11 1981); *United States* v. *Lasky*, 600 F. 2d 765, 769 (CA9), cert. denied, 444 U. S. 979 (1979). We see no reason to depart from the majority rule in this case.[3]

The only clue to the issues in the earlier case was a discussion between the prosecutor, Dowling's attorney, and the District Judge that took place during the District Court's hearing on the admission of Henry's testimony under Rule 404(b). App. 18–25. Arguing against the admission of Henry's testimony, Dowling's lawyer pointed out that Dowling had been acquitted of breaking into Ms. Henry's home. The trial judge, who had also presided at Dowling's first trial, recalled that Dowling "was not acquitted on the issue of identification." *Id.*, at 21. The prosecutor then contended that Dowling had not disputed identity, but rather had claimed that a robbery had not taken place because he and Christian allegedly "merely came to retrieve . . . money from an individual in the house." *Ibid.* The court then made the statement that "Mr. Dowling's presence in the house was not seriously contested in the case but he stated the general defense. Mr. Dowling, I don't think took the stand." *Ibid.*

---

[3] Dowling notes that the party introducing evidence carries the burden of demonstrating the evidence's relevance. He argues that this duty, in the context of the collateral-estoppel component of the Double Jeopardy Clause, requires the Government to establish that a previous acquittal did not resolve a question at issue in a second trial. We disagree. Relevancy is a threshold inquiry. That the burden is on the introducing party to establish relevancy does not also require the introducing party to anticipate and rebut possible objections to the offered evidence.

Dowling also suggests that we should place the burden on the Government in this instance because, as opposed to the situation in *Ashe* v. *Swenson*, 397 U. S. 436 (1970), for example, he does not seek to terminate the prosecution but merely hopes to exclude evidence. This is a distinction without a difference. If anything, the equities weigh in the other direction: in this case, Dowling only faces the risk of the introduction of prejudicial evidence, whereas, in *Ashe* v. *Swenson*, the defendant was threatened with an illegitimate conviction.

There are any number of possible explanations for the jury's acquittal verdict at Dowling's first trial. As the record stands, there is nothing at all that persuasively indicates that the question of identity was at issue and was determined in Dowling's favor at the prior trial; at oral argument, Dowling conceded as much. Tr. of Oral Arg. 16. As a result, even if we were to apply the Double Jeopardy Clause to this case, we would conclude that petitioner has failed to satisfy his burden of demonstrating that the first jury concluded that he was not one of the intruders in Ms. Henry's home.

## III

Besides arguing that the introduction of Henry's testimony violated the Double Jeopardy Clause, petitioner also contends that the introduction of this evidence was unconstitutional because it failed the due process test of "fundamental fairness." We recognize that the introduction of evidence in circumstances like those involved here has the potential to prejudice the jury or unfairly force the defendant to spend time and money relitigating matters considered at the first trial. The question, however, is whether it is acceptable to deal with the potential for abuse through nonconstitutional sources like the Federal Rules of Evidence,[4] or whether the introduction of this type of evidence is so extremely unfair that its admission violates "fundamental conceptions of justice." *United States* v. *Lovasco*, 431 U. S. 783, 790 (1977).

Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. We, therefore, have defined the category of infractions that violate "fundamental fairness" very narrowly. As we observed in *Lovasco, supra*, at 790:

---

[4] The Third Circuit, as noted above, found Henry's testimony inadmissible under both Rule 404(b) and Rule 403. 855 F. 2d 114, 122 (1988). The United States urges that this was error, but in affirming we need not pass on the validity of the Court of Appeals' judgment in this respect.

"Judges are not free, in defining 'due process,' to impose on law enforcement officials [their] 'personal and private notions' of fairness and to 'disregard the limits that bind judges in their judicial function.' *Rochin* v. *California,* 342 U. S. 165, 170 (1952). . . . [They] are to determine only whether the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' *Mooney* v. *Holohan,* 294 U. S. 103, 112 (1935), and which define 'the community's sense of fair play and decency,' *Rochin* v. *California, supra,* at 173."

Especially in light of the limiting instructions provided by the trial judge, we cannot hold that the introduction of Henry's testimony merits this kind of condemnation. Plainly Henry's testimony was at least circumstantially valuable in proving petitioner's guilt.

Petitioner lists four reasons why, according to him, admission of Henry's testimony was fundamentally unfair. First, petitioner suggests that evidence relating to acquitted conduct is inherently unreliable. We disagree: the jury in this case, for example, remained free to assess the truthfulness and the significance of Henry's testimony, and petitioner had the opportunity to refute it. Second, Dowling contends that the use of this type of evidence creates a constitutionally unacceptable risk that the jury will convict the defendant on the basis of inferences drawn from the acquitted conduct; we believe that the trial court's authority to exclude potentially prejudicial evidence adequately addresses this possibility.

Third, petitioner claims that the exclusion of acquitted conduct evidence furthers the desirable goal of consistent jury verdicts. We, however, do not find any inconsistency between Dowling's conviction for the First Pennsylvania Bank robbery and his acquittal on the charge of robbing Ms. Henry for the obvious reason that the jury's verdict in his second trial did not entail any judgment with respect to the offenses charged in his first. In any event, inconsistent verdicts are

constitutionally tolerable. See *Standefer* v. *United States*, 447 U. S. 10, 25 (1980).

Fourth, petitioner argues that the introduction of Henry's testimony in this case contravenes a tradition that the government may not force a person acquitted in one trial to defend against the same accusation in a subsequent proceeding. We acknowledge the tradition, but find it amply protected by the Double Jeopardy Clause. We decline to use the Due Process Clause as a device for extending the double jeopardy protection to cases where it otherwise would not extend.

## IV

Because we conclude that the admission of Ms. Henry's testimony was constitutional and the Court of Appeals therefore applied the correct harmless-error standard, we affirm the judgment of the Court of Appeals.

*It is so ordered.*

JUSTICE BRENNAN, with whom JUSTICE MARSHALL and JUSTICE STEVENS join, dissenting.

At petitioner's trial for bank robbery, the prosecutor introduced the testimony of Vena Henry that petitioner had attempted to rob her in her home approximately two weeks after the bank robbery. Petitioner, however, had already been tried in connection with that incident and had been acquitted of burglary, attempted robbery, assault, and weapons offenses. Because the introduction of this testimony effectively forced petitioner to defend against charges for which he had already been acquitted, the doctrine of criminal collateral estoppel grounded in the Double Jeopardy Clause should have prohibited the Government from introducing the testimony. I would reverse the judgment of the Court of Appeals for the Third Circuit and remand for consideration whether the admission of this testimony was harmless error under the standard enunciated in *Chapman* v. *California*, 386 U. S. 18, 24 (1967). Therefore, I respectfully dissent.

## I

"The law 'attaches particular significance to an acquittal.'" *United States* v. *DiFrancesco*, 449 U. S. 117, 129 (1980) (quoting *United States* v. *Scott*, 437 U. S. 82, 91 (1978)). The core protection of the Double Jeopardy Clause attaches to an acquittal and prohibits retrial for the "same offense" after an acquittal. *United States* v. *Martin Linen Supply Co.*, 430 U. S. 564, 571 (1977). Two offenses are considered the "same offense" for double jeopardy purposes unless each offense requires proof of a fact that the other does not. *Blockburger* v. *United States*, 284 U. S. 299, 304 (1932). An acquittal on a greater or lesser included offense, for example, bars prosecution on the other offense. *Brown* v. *Ohio*, 432 U. S. 161, 168 (1977). This protection applies even if the acquittal is based on an "egregiously erroneous foundation." *Fong Foo* v. *United States*, 369 U. S. 141, 143 (1962) *(per curiam); Sanabria* v. *United States*, 437 U. S. 54, 68–69 (1978).

According such significance to an acquittal reflects both an institutional interest in preserving the finality of judgments and a strong public interest in protecting individuals against governmental overreaching. See *Brown* v. *Ohio, supra*, at 165 ("Where successive prosecutions are at stake, the [Double Jeopardy Clause] serves 'a constitutional policy of finality for the defendant's benefit'") (quoting *United States* v. *Jorn*, 400 U. S. 470, 479 (1971) (plurality opinion)). The overriding concern is that "[t]o permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant, so that 'even though innocent he may be found guilty.'" *Scott, supra*, at 91 (quoting *Green* v. *United States*, 355 U. S. 184, 188 (1957)). The rule also protects a defendant against being compelled "to live in a continuous state of anxiety and insecurity" about whether he will be retried and from the

"embarrassment, expense and ordeal" of an actual reprosecution. *Green, supra,* at 187.

These concerns are most clearly implicated when the defendant is retried for the "same offense" after an acquittal. In *Ashe* v. *Swenson,* 397 U. S. 436 (1970), however, the Court significantly expanded the protection to which a defendant is constitutionally entitled after an acquittal by holding that the Double Jeopardy Clause incorporates the doctrine of criminal collateral estoppel. *Id.,* at 445–446. The doctrine of collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.,* at 443. In a criminal case, collateral estoppel prohibits the Government from relitigating any ultimate facts resolved in the defendant's favor by the prior acquittal. *Id.,* at 445–446. Thus, in addition to being protected against retrial for the "same offense," the defendant is protected against prosecution for an offense that requires proof of a fact found in his favor in a prior proceeding.

The question in this case is whether the criminal collateral-estoppel doctrine should apply when the Government seeks to introduce in a subsequent trial evidence relating to another criminal offense for which the defendant has been acquitted. Before a jury can consider facts relating to another criminal offense as proof of an element of the presently charged offense, the jury must conclude by a preponderance of the evidence "that the act occurred and that the defendant was the actor." *Huddleston* v. *United States,* 485 U. S. 681, 689 (1988). To the extent that the prior acquittal of the other offense determined either of those factual issues in the defendant's favor, the introduction of this evidence imposes on the defendant the burden of relitigating those facts and thereby increases the likelihood of an erroneous conviction on the charged offense. Thus, I would extend the collateral-estoppel doctrine to preclude the Government from introduc-

ing evidence which relies on facts previously determined in the defendant's favor by an acquittal.[1]

The Court refuses to apply the collateral-estoppel doctrine in this case for two reasons. First, it asserts that petitioner failed to carry his burden of proving that the issue on which he sought to foreclose relitigation was decided in his favor by the first acquittal. More importantly, the Court refuses to apply the collateral-estoppel doctrine when facts underlying a prior acquittal are used as evidence of another offense. Both of the Court's conclusions are inconsistent with the purposes of the collateral-estoppel rule.

A

The Court first asserts that petitioner did not prove that the issue on which he sought to foreclose relitigation "was actually decided in the first proceeding." *Ante*, at 350. The Court's summary conclusion that the defendant should bear the burden of proof when invoking the collateral-estoppel doctrine fails to serve the purposes of the doctrine and the Double Jeopardy Clause in general. Since the doctrine serves to protect defendants against governmental overreaching, the Government should bear the burden of proving that the issue it seeks to relitigate was *not* decided in the defendant's favor by the prior acquittal. As we noted in *Ashe*, because criminal verdicts are general verdicts, it is usually difficult to determine the precise route of the jury's reasoning and the basis on which the verdict rests. See 397 U. S., at

---

[1] The cases often refer to this situation as collateral estoppel with respect to an "evidentiary fact" in order to distinguish it from the situation present in *Ashe* v. *Swenson*, 397 U. S. 436 (1970). See, *e. g.*, *United States* v. *Keller*, 624 F. 2d 1154, 1159 (CA3 1980). In *Ashe*, the prior acquittal determined facts which were a necessary element of the second offense. 397 U. S., at 445–446 (since issue of identity determined in trial for robbery of one victim, collateral estoppel precluded prosecution for robbery of second victim). In this situation, by contrast, the previously litigated facts are introduced only as evidence of an element of another offense.

444. By putting the burden on the defendant to prove what issues were "actually decided," the Court essentially denies the protection of collateral estoppel to those defendants who affirmatively contest more than one issue or who put the Government to its burden of proof with respect to all elements of the offense. This result is inconsistent with our admonition in *Ashe* that an excessively technical approach to collateral estoppel "would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal." *Ibid.* Indeed, forcing defendants to choose between forgoing the protections of the Double Jeopardy Clause and abandoning the defense of a general denial raises grave due process concerns.

Even assuming that petitioner was properly required to bear the burden of proof, I conclude that petitioner carried it in this case. Vena Henry testified that petitioner had entered her home wearing a mask and carrying a gun but that, after a struggle in which she pulled off the mask, he ran away. There is every reason to believe that the jury rested its verdict on the belief that petitioner was not present in the Henry home. Petitioner was charged with such a wide array of offenses relating to the Henry incident that no other conclusion is "rationally conceivable." *Id.*, at 445. For example, if the jury had acquitted petitioner of attempted robbery because he lacked the requisite intent, it would still have found him guilty of a weapons offense. Neither the comments of the trial judge in this trial that petitioner had not "seriously contested" the issue of identity in the Henry trial but had stated a general defense, App. 21, nor the prosecutor's statement in this case that petitioner's codefendant in the Henry trial had admitted being in the house, *ibid.*, provides a sufficient basis on which to conclude that the issue of identity was not resolved in petitioner's

favor by the acquittal.[2]  Thus, if collateral estoppel applies to the evidentiary use of facts, the Government should not have been allowed to introduce Henry's testimony.

## B

The Court holds, however, that collateral estoppel does not apply when facts previously found in a defendant's favor are later introduced as evidence of a second offense.  The Court excepts from the normal rule of criminal collateral estoppel those situations when the jury can consider the facts under a lower standard of proof in the second proceeding than in the first trial.  The Court endorses this exception without any consideration of the purposes underlying the collateral-estoppel doctrine; it is not surprising that the Court's holding reflects an unrealistic view of the risks and burdens imposed on the defendant when facts relating to a prior offense for which he has been acquitted are introduced in a subsequent criminal proceeding.

As the Court notes, we have held that an acquittal in a criminal case does not bar subsequent civil forfeiture actions for the same transaction because the acquittal "merely

---

[2] In fact, in this case, the acquittal alone should have been sufficient to estop the Government from introducing the Henry evidence.  Henry's testimony was introduced not as direct proof but as circumstantial evidence that petitioner was also the masked bank robber, because the mask worn by the intruder in Henry's home was not the same as the mask worn by the bank robber.  App. 27.  Thus, the jury was invited to infer from the fact that petitioner had allegedly once before worn a different mask and carried a gun that he was the masked bank robber.  The jury was instructed that it was to consider the testimony only "to the extent that it helps you in determining the identity of the person who committed the [bank robbery]. . . . Mr. Dowling was found not guilty of the crime of robbery in connection with that."  *Id.*, at 29.  Nothing in the instructions ensured that the jury did not consider the fact that petitioner had worn a mask and carried a gun *during a prior attempted robbery* as evidence that petitioner was the masked bank robber.  Since the acquittal at least determined that petitioner had not committed an attempted robbery, the acquittal should have been enough to preclude the Government from asking the jury to draw that inference.

proves the existence of a reasonable doubt as to [the defend-ant's] guilt." *United States* v. *One Assortment of 89 Fire-arms*, 465 U. S. 354, 361 (1984); see also *One Lot Emerald Cut Stones* v. *United States*, 409 U. S. 232, 235 (1972); *Helvering* v. *Mitchell*, 303 U. S. 391, 397 (1938). However, those forfeiture cases involved civil remedial measures rather than criminal punishment. *89 Firearms, supra*, at 362–366; *Helvering, supra*, at 397–398. We have never before applied such reasoning to a successive criminal prosecution in which the Government seeks to punish the defendant and hinges that punishment at least in part on a criminal act for which the defendant has been acquitted.[3] Indeed, in *Ashe* we indi-cated to the contrary: "'It is much too late to suggest that [collateral estoppel] is not fully applicable to a former judg-ment in a criminal case, . . . because the judgment may re-flect only a belief that the Government had not met the higher burden of proof exacted in such cases for the Govern-ment's evidence as a whole . . . .'" 397 U. S., at 443 (quot-ing *United States* v. *Kramer*, 289 F. 2d 909, 913 (CA2 1961)). We have always recognized a distinction between govern-mental action intended to punish and that which is not, see, *e. g., United States* v. *Halper*, 490 U. S. 435, 446–448 (1989) (Double Jeopardy Clause implicated when civil fine is puni-tive); *United States* v. *Salerno*, 481 U. S. 739, 746–747 (1987) (upholding Bail Reform Act of 1984 as regulatory rather than punitive measure). Thus, it would be consistent to hold that

---

[3] The Government cites *Standefer* v. *United States*, 447 U. S. 10 (1980), as support for its argument that the doctrine of collateral estoppel should not apply to the evidentiary use of facts. In *Standefer*, the Court held that a defendant could not invoke the acquittal of the principal as a bar to his prosecution as an accomplice. *Id.*, at 24. Although the Court noted that collateral estoppel should be applied sparingly against the Govern-ment, *id*, at 22–24, the defendant in *Standefer* had not yet been tried. Thus, the concerns which protect a defendant against relitigation were not implicated. When those concerns are implicated, they outweigh any need to apply collateral estoppel cautiously against the Government.

the collateral-estoppel doctrine applies in the criminal (or quasi-criminal) context and not in the civil; when the Government seeks to punish a defendant, the concern for fairness is much more acute.[4]

Whenever a defendant is forced to relitigate the facts underlying a prior offense for which he has been acquitted, there is a risk that the jury erroneously will decide that he is guilty of that offense. That risk is heightened because the jury is required to conclude that the defendant committed the prior offense only by a preponderance of the evidence. Cf. *In re Winship*, 397 U. S. 358, 363 (1970) (reasonable-doubt standard "is a prime instrument for reducing the risk of convictions resting on factual error"). The fact that the prior offense is used as evidence of the presently charged offense raises concerns about the reliability of the jury's ultimate conclusion that the defendant committed the presently charged offense. These concerns stem in large part from the inherent danger of evidence relating to an extrinsic criminal offense. First, "[o]ne of the dangers inherent in the admission of extrinsic offense evidence is that the jury may convict the defendant not for the offense charged but for the extrin-

---

[4] The higher reasonable-doubt standard is employed in the criminal context to ensure the accuracy of convictions and thereby *protect* defendants, not to permit introduction of evidence of crimes for which the defendant has been acquitted. *In re Winship*, 397 U. S. 358, 363 (1970). By definition, when the Government fails to prove a defendant guilty beyond a reasonable doubt, the defendant is considered legally innocent. Unlike the majority of the Court, I believe that at least with respect to subsequent criminal prosecutions, "the acquitted defendant is to be treated as innocent and in the interests of fairness and finality made no more to answer for his alleged crime." *State* v. *Wakefield*, 278 N. W. 2d 307, 308 (Minn. 1979). It is ironic that petitioner would have been better off, in his second trial, if he had not been represented by counsel at the first trial and had been convicted because uncounseled convictions may not be used in any capacity in subsequent trials. See *Loper* v. *Beto*, 405 U. S. 473, 483 (1972) (impeachment); *United States* v. *Tucker*, 404 U. S. 443, 447 (1972) (sentencing enhancement); *Burgett* v. *Texas*, 389 U. S. 109, 115 (1967) (substantive evidence).

sic offense. This danger is particularly great where . . . the extrinsic activity was not the subject of a conviction; the jury may feel the defendant should be punished for that activity even if he is not guilty of the offense charged." *United States* v. *Beechum*, 582 F. 2d 898, 914 (CA5 1978) (en banc) (citations omitted). Alternatively, there is the danger that the evidence "may lead [the jury] to conclude that, having committed a crime of the type charged, [the defendant] is likely to repeat it." *Ibid.* Thus, the fact that the defendant is forced to relitigate his participation in a prior criminal offense under a low standard of proof combined with the inherently prejudicial nature of such evidence increases the risk that the jury erroneously will convict the defendant of the presently charged offense.

The Court's only response is that the defendant is free to introduce evidence to rebut the contention that he committed the prior offense. This response, of course, underscores the flaw in the Court's reasoning: introduction of this type of evidence requires the defendant to mount a second defense to an offense for which he has been acquitted. That the facts relating to the prior offense are used only as evidence of another crime does not reduce the burden on the defendant; he is still required to defend against the prior charges. Moreover, because of the significance a jury may place on evidence of a prior criminal offense, presenting a defense against that offense may be as burdensome as defending against the presently charged offense. Finally, since the lower standard of proof makes it easier for the jury to conclude that the defendant committed the prior offense, the defendant is essentially forced to present affirmative evidence to rebut the contention that he committed that offense.[5]

---

[5] The fact that the trial judge may instruct the jury that the defendant was acquitted does not sufficiently protect the defendant from the need to present evidence. There is no guarantee that the jury will give any weight to the acquittal; the jury may disregard it or even conclude that the first jury made a mistake.

The Court today adds a powerful new weapon to the Government's arsenal. The ability to relitigate the facts relating to an offense for which the defendant has been acquitted benefits the Government because there are many situations in which the defendant will not be able to present a second defense because of the passage of time, the expense, or some other factor. Indeed there is no discernible limit to the Court's rule; the defendant could be forced to relitigate these facts in trial after trial. Moreover, the Court's reasoning appears to extend even further than the facts of this case and seems to allow a prosecutor to rely on a prior criminal offense (despite an acquittal) as evidence in a trial for an offense which is part of the *same transaction* as the prior offense. For example, a prosecutor could introduce facts relating to a substantive offense as evidence in a trial for conspiracy, *even though* the defendant had been acquitted of the substantive offense. Cf. *Ashe,* 397 U. S., at 445, n. 10 (the question whether collateral estoppel was a constitutional requirement was of little concern until modern statutes gave prosecutors the ability to "spin out a startingly numerous series of offenses from a single alleged criminal transaction"). Indeed, the Court's reasoning could apply even more broadly to justify the introduction of evidence of a prior offense for which the defendant had been acquitted in order to enhance a defendant's sentence under a sentencing scheme that requires proof by less than a reasonable doubt. See, *e. g., McMillan* v. *Pennsylvania,* 477 U. S. 79, 91–93 (1986) (upholding constitutionality of sentencing scheme requiring proof of additional facts by preponderance of evidence). Only by ignoring the principles upon which the collateral-estoppel doctrine is based is it possible for the Court to tip the scales this far in the prosecution's favor.

## II

The Court's holding today deprives an acquitted defendant of his rightful end to the "blight and suspicious aura which surround an accusation that he is guilty of a specific crime."

*Wingate* v. *Wainwright*, 464 F. 2d 209, 215 (CA5 1972). Because the Court's holding is based on a hypertechnical view of an acquittal and reflects a naive view of the defendant's burden in a criminal trial, I respectfully dissent.