983 F.2d 1077
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Fred Ray NESBIT, Petitioner-Appellant,
v.
Daniel MCCARTHY, Director, Defendant-Appellee.
 No. 91-16945.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 14, 1992.*
Decided Jan. 4, 1993.
 
 Before GOODWIN, O'SCANNLAIN and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Fred Ray Nesbit appeals the district court's denial of his petition for a writ of habeas corpus. Nesbit was convicted of one count of second degree murder in California state court. He argues that the trial court violated his due process rights by admitting "gunshot signature" evidence. We have jurisdiction pursuant to 28 U.S.C. § 1291 and § 2253, and we affirm.
 
 
 3
 * Nesbit and his wife, Rebecca Nesbit ("Rebecca"), separated in January 1985. A dispute over the ownership of two horses subsequently developed between Nesbit and Rebecca. On March 27, 1985, Rebecca and her lover, Donald Hallock, moved the horses from Nesbit's property. That evening, Nesbit and his girlfriend, Connie Meider, went to Rebecca's apartment. Nesbit had consumed approximately six beers and was armed with a .38 caliber handgun. When Meider knocked on the door, Rebecca and Hallock, who was also in the apartment and was armed with a .45 caliber handgun, did not respond.
 
 
 4
 When Rebecca saw Nesbit in the driveway with a handgun, she called 911. Nesbit returned to the apartment and, finding that the lights had been turned off, forced open the door. The ensuing gun battle between Nesbit and Hallock was recorded on the 911 tape. Physical evidence shows that Nesbit's .38 was fired twice and Hallock's .45 was fired five times. Both men were injured and Hallock died the next day from his injuries.
 
 
 5
 The direct evidence of who shot first consisted of the testimony of Rebecca Nesbit and a hearsay statement by Hallock. Rebecca testified that Nesbit fired about four times before Hallock fired back. The physical evidence that Nesbit fired only twice contradicts this testimony. Hallock stated to an officer that he "shot Fred back"; this hearsay statement was admitted as a dying declaration.
 
 
 6
 The controversy in this appeal is over the testimony of Los Angeles Deputy Sheriff Craig Melvin, who presented "gunshot signature" acoustical analysis which suggested that the first and fifth shots on the 911 tape were acoustically similar, and that the other shots were acoustically dissimilar from the first and fifth shots. Melvin concluded from this evidence that the first and fifth shots "most likely" were fired by Nesbit's .38. Nesbit offered the testimony of acoustics engineer Fausto Poza to impeach Melvin's testimony.
 
 
 7
 Nesbit was convicted of one count of second degree murder. The California Court of Appeal upheld Nesbit's conviction, finding proper the trial judge's ruling that Melvin's testimony was admissible, see People v. Nesbit, No. 3 Crim. C001156 (Aug. 20, 1987), and the California Supreme Court dismissed Nesbit's petition for review. Nesbit filed this action for a writ of habeas corpus on August 30, 1988. The magistrate judge assigned to the case held an evidentiary hearing on the reliability of the gunshot signature evidence. The magistrate judge recommended that the writ of habeas corpus be granted, but the district court declined to follow the recommendation and denied Nesbit's petition. This appeal followed.
 
 II
 
 8
 The State of California argues that Nesbit failed to exhaust state remedies. Title 28 U.S.C. § 2254(b) provides that "a writ of habeas corpus ... shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State...." See also Rose v. Lundy, 455 U.S. 509 (1982). A petitioner is not required to "cite[ ] book and verse on the federal constitution," see Picard v. Connor, 404 U.S. 270, 278 (1971) (citation and internal quotes omitted), but must simply present the substance of his claim to the state courts, id. See also Tamapua v. Shimoda, 796 F.2d 261, 262 (9th Cir.1986) ("the exhaustion requirement is satisfied once a claim has been fairly presented to the highest state court").
 
 
 9
 Nesbit argued to all state courts that Melvin's testimony should have been excluded under the standard of Frye v. United States, 293 F. 1013 (D.C.Ct.App.1923), and People v. Kelly, 17 Cal.3d 24 (1976). He argued in his petition for review to the California Supreme Court that the admission of the evidence violated his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution. These arguments sufficiently presented Nesbit's constitutional claim to the California courts and satisfy the requirements of 28 U.S.C. § 2254(b).
 
 III
 
 10
 Nesbit contends that admission of the gunshot signature evidence violated his due process rights. In order to establish a due process violation based on erroneous admission of evidence, Nesbit "must show that that error rendered the trial so 'arbitrary and fundamentally unfair' that it violated federal due process." Pennywell v. Rushen, 705 F.2d 355, 357 (9th Cir.1983) (quoting Powell v. Spalding, 679 F.2d 163, 166 (9th Cir.1982)). The Supreme Court has stated that a writ of habeas corpus will only be granted for erroneous admission of evidence where the "testimony is almost entirely unreliable and ... the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." Barefoot v. Estelle, 463 U.S. 880, 899 (1983) (psychiatric testimony regarding dangerousness of defendant). The Court recently reached a similar result in Estelle v. McGuire, --- U.S. ----, 112 S.Ct. 475 (1991), where it considered evidence of "battered child syndrome":
 
 
 11
 [W]e reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.
 
 
 12
 Id. at 480. See also Dowling v. United States, 493 U.S. 342, 352 (1990) ("We ... have defined the category of infractions that violate 'fundamental fairness' very narrowly.") (evidence of prior acquitted conduct); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir.1991) ("failure to comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief") (character evidence); Kealohapauole v. Shimoda, 800 F.2d 1463, 1466 (9th Cir.1986) (state court ruling admitting evidence will not be disturbed "on due process grounds in a habeas proceeding unless the admission ... rendered the trial fundamentally unfair") (videotape of autopsy), cert. denied, 479 U.S. 1068 (1987).
 
 
 13
 Nesbit argues that gunshot signature evidence is inadmissible under the standard of Frye v. United States and People v. Kelly. The Kelly/Frye test is a California state law standard. As the Supreme Court stated in Estelle v. McGuire, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." McGuire, 112 S.Ct. at 480. Whether the gunshot signature evidence in this case satisfied the Kelly/Frye test (as the California trial court and Court of Appeal found) or not (as the magistrate judge found), the admission of the evidence was not "so 'arbitrary and fundamentally unfair' that it violated federal due process." Pennywell, 705 F.2d at 357. Even though the state did not demonstrate that Melvin's analytical technique had been unequivocally proven reliable, the testimony at trial demonstrated that Melvin based the technique on accepted scientific methods. The accuracy of the data on which Melvin based his conclusions was not disputed. Furthermore, the jury was also able to consider the testimony of the qualified expert (Poza) whom Nesbit called to rebut the validity of Melvin's technique.
 
 
 14
 Nesbit also argues that the gunshot signature evidence is crucial because of the limited additional evidence of whether he or Hallock fired first. The nature of this other evidence does not affect our conclusion that admission of the evidence did not deny Nesbit a fair trial.
 
 
 15
 Finally, Nesbit argues that admission of the testimony here is particularly dangerous because of the "aura of scientific reliability" associated with expert testimony on scientific issues. However, this difficulty may arise with any expert testimony and is less acute where scientific testimony is conceptually comprehensible to a lay jury. See United States v. Smith, 869 F.2d 348, 354 (7th Cir.1989); United States v. Williams, 583 F.2d 1194, 1199-1200 (2d Cir.1978), cert. denied, 439 U.S. 1117 (1979). Like the voiceprint evidence in Smith and Williams, the gunshot signature evidence here involves the technical comparison of recorded sounds, a process which is reasonably comprehensible to a lay jury.
 
 
 16
 We conclude that the district court did not err in denying Nesbit's habeas petition.
 
 
 17
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3