SUMMARY ORDER

Richard Vallee appeals from his conviction, following a jury trial, of using an explosive to destroy a vehicle used in interstate commerce, 18 U.S.C. § 844(i), and murdering Lee Carter to prevent communication of information to a federal law enforcement officer, 18 U.S.C. § 1512(a)(1)(C). On April 14, 2008, 2008 WL 1744561, the district court sentenced Vallee to life imprisonment on each count. We assume the parties’ familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision.
1. The Canadian prosecutor’s testimony
Vallee challenges as irrelevant and unduly prejudicial the admission of testimony by a Canadian prosecutor that she told Vallee’s trial counsel that Carter was the sole witness against Vallee in a Canadian drug prosecution. The testimony was offered to prove Vallee’s motive to murder Carter. We review a trial court’s evidentiary rulings under a deferential abuse of discretion standard, reversing only when we conclude that the challenged evidentiary rulings were arbitrary and irrational. See United States v. Quinones, 511 F.3d 289, 307-08 (2d Cir.2007). We find no abuse of discretion.
First, the testimony at issue was not hearsay because it was not admitted for the truth of the matter asserted, but rather as evidence of Vallee’s state of mind. Fed.R.Evid. 801(c).
Second, the evidence was relevant because it had a tendency to make the existence of a fact — whether Vallee knew that Carter was an important witness against him — “more probable or less probable than it would be without the evidence.” Fed.R.Evid. 401. We have explained that “evidence regarding the knowledge of individuals other than the defendant should be admitted only if there is some other evidence in the record— concerning, for example, ... the relationship of the parties — from which to conclude that the defendant would have the same knowledge.” United States v. Kaplan, 490 F.3d 110, 120 (2d Cir.2007). Here, there was evidence of a relationship which would permit the jury to infer the transmittal of the information: the attorney-client relationship of Vallee and his trial counsel. Moreover, Vallee admitted to Canadian law enforcement officials: “you know what happened to Carter, I blew him up; he didn’t come to testify; and the other two won’t come to testify either.” Vallee’s admission to killing Carter is evidence that would permit the jury to infer that Vallee knew Carter was an *920 important witness against him, and that he acquired such knowledge from his counsel. See Fed.R.Evid. 104(b).
Finally, the district court also did not abuse its discretion in declining to exclude this testimony on the ground that its probative value was substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403. Unfair prejudice “does not mean the damage to the opponent’s case that results from the legitimate probative force of the evidence; rather, it refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means.” 22 C. Wright & K. Graham, Federal Practice and Procedure § 5215 at 274-75 (1978). Although the Canadian prosecutor’s testimony was damaging to Vallee’s defense insofar as it suggested a motive for the alleged crimes, its probative value depended upon a reasonable inference regarding attorney-client communications, instead of upon an “illegitimate emotional appeal.” Id. (internal quotation marks omitted).
2. Carter’s out-of-court statements
Vallee argues that the admission of Carter’s identification of him, as well as the admission of Carter’s notes of a meeting with Vallee in Quebec, violated Vallee’s rights under the Confrontation Clause.[2] U.S. Const. amend. VI. The evidence was admitted under the forfeiture-by-wrongdoing exception to the hearsay rule and Confrontation Clause upon a finding that the prosecution had proved by a preponderance of the evidence that Vallee intentionally killed Carter to prevent him from testifying in the Canadian prosecution. See Fed.R.Evid. 804(b)(6). In Giles v. California, - U.S. -, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008), the Supreme Court held that the forfeiture-by-wrongdoing doctrine applies “only when the defendant engaged in conduct designed to prevent the witness from testifying.” Id. at 2683 (emphasis in original). This Circuit’s precedent at the time of trial was not to the contrary. See United States v. Dhinsa, 243 F.3d 635, 653-54 (2d Cir.2001).
Vallee argues that after Giles, the forfeiture-by-wrongdoing doctrine ought to apply only in the proceeding from which it was the defendant’s purpose to procure the witness’s absence. Vallee urges this Court to overrule our cases which hold that “[a] defendant who wrongfully and intentionally renders a declarant unavailable as a witness in any proceeding forfeits the right to exclude ... the declarant’s statements at that proceeding and any subsequent proceeding. ” United States v. Stewart, 485 F.3d 666, 672 (2d Cir.2007) (internal quotation marks omitted) (emphasis added). Giles does not cast doubt on this controlling precedent and therefore we decline to overrule it.[3] See Consub *921 Delaware LLC v. Schahin Engenharia Limitada, 543 F.3d 104, 109 (2d Cir.2008). Thus, because the district court found by a preponderance of the evidence that Vallee intended to, and did, procure Carter’s absence as a witness in the Canadian prosecution, the court did not err in admitting Carter’s out-of-court statements against Vallee in his subsequent prosecution for the murder of Carter.
3. The Canadian law enforcement officials’ testimony
At trial, Agent Trudel testified that Val-lee admitted to killing Carter during an interrogation by Agents Trudel and Morin in Canada:
I began by introducing myself, and Mr. Morin did the same thing.... I informed [Vallee] that he was under arrest for the murder of Lee Carter; that he had the right to be silent; that he could contact a lawyer. He replied that he had just spoken to a lawyer. I then mentioned to him that there were two individuals who were talking against him with regards to several murders and murder conspiracies, one of them being the murder of Lee Carter.... And he answered me, you know what happened to Carter, I blew him up; he didn’t come to testify; and the other two won’t come to testify either.[4]
We find no abuse of discretion in admitting this testimony.[5]
First, Vallee concedes that his admission, “you know what happened to Carter, I blew him up; he didn’t come to testify,” was properly admitted.
Second, Vallee’s statement, “the other two won’t come to testify either,” was properly admitted as proof of the charged crime. Vallee’s use of the word “either” clearly referred to Carter. Thus, his statement that “the other two won’t come to testify either” was not admitted to prove that Vallee had a propensity for killing or threatening potential witnesses. See Fed.R.Evid. 404(a). Rather, the statement “constituted important proof of the charged crime[ ]” and was admissible without regard to Rule 404 because it was “part of the very act charged, or, at least, proof of that act.” Quinones, 511 F.3d at 309 (internal quotation marks omitted).
Finally, Agent Trudel’s statement that “there were two individuals who were talking against him with regards to several murders and murder conspiracies” was properly admitted for the purpose of providing the context necessary to understand Vallee’s statements. Vallee’s statement that “the other two won’t come to testify either” would have been unintelligible without also admitting Trudel’s statement, which provided the context necessary to understand to whom “the other two” referred. See United States v. Sorrentino, 72 F.3d 294, 298 (2d Cir.1995). Furthermore, Vallee’s counsel argued to the jury that Vallee’s alleged admission (“I blew him up”) was not credible and should not be believed. Given this argument, it was particularly important to provide the jury *922 with the entire context of the conversation, which revealed that Vallee was boasting about having killed Carter. Thus, because this statement was offered, not as proof of “other crimes, wrongs, or acts,” but rather as part of the proof of Vallee’s admission to the crime for which he was charged, Rule 404(b) was not implicated. Given the substantial probative value of Vallee’s admission, we do not find that the district court abused its discretion in declining to exclude the testimony under Rule 403.
Vallee argues that the Jencks Act, 18 U.S.C. § 3500, required the exclusion of Agents Trudel’s and Morin’s testimony because “quick notes” taken by Morin during their interrogation of Vallee were discarded after Morin used those notes to compile an official report of the interrogation. Trudel and Morin were Canadian agents who questioned Vallee in Canada, and — as noted by the district court — “[tjhere is no evidence that American officials controlled, directed, participated in or were, in any way, involved with the Canadian authorities in the ... questioning.” Nor was there evidence that American officials asked Canadian officials to arrest Vallee. “The Government is not under an obligation to produce prior statements of foreign law enforcement officials that it does not possess.” United States v. Yousef, 327 F.3d 56, 129 (2d Cir.2003). But “ ‘even in the course of a joint investigation undertaken by United States and foreign law enforcement officials the most the Jencks Act requires of United States officials is a good-faith effort to obtain the statements of prosecution witnesses in the possession of the foreign government.’ ” Id. (quoting United States v. Paternina-Vergara, 749 F.2d 993, 998 (2d Cir.1984)). There is no basis for concluding that the government failed to make the requisite good-faith effort in this case.[6] Thus, this claim is rejected.[7]
We have reviewed Vallee’s remaining arguments and find them to be without merit. For the reasons stated above, the judgment of the district court is AFFIRMED.

. We assume, without deciding, that these statements were ‘‘testimonial” and not admissible for any non-hearsay purpose.

. The Confrontation Clause "is most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding.” Crawford v. Washington, 541 U.S. 36, 54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). It is unclear whether, at this country's founding, the forfeiture-by-wrongdoing exception applied to testimony initially collected for one proceeding but subsequently introduced at a second proceeding involving the same defendant but a different offense. Compare Reynolds v. United States, 98 U.S. 145, 158-59, 25 L.Ed. 244 (1878) (holding, under "long-established” principles dating back to English common law, that "if a witness is kept away by the adverse party, his testimony, taken on a former trial between the same parties upon the same issues, may be given in evidence”), with John Pitt Taylor, A Treatise on the Law of Evidence as Administered in England and Ireland 330 (9th ed. 1897) ("if a witness be kept out of the way by the adversary, his former statements on oath *921 will be admissible”). Nonetheless, the Supreme Court’s invitation in Giles to the state court to explore defendant’s intent on remand, Giles, 128 S.Ct. at 2693, suggests that the exception applies to statements introduced at the declarant’s murder trial, provided, at least, that the defendant intended to prevent the witness from testifying at an earlier proceeding.

. Agent Trudel repeated his testimony about “two separate murder cases” and Agent Morin likewise testified that "Mr. Trudel told Mr. Vallee that there were two people who were willing to testify for the conspiracies to murder and murders that Mr. Vallee would have committed.”

. Accordingly, we need not decide whether Vallee properly objected at trial and preserved this issue for appeal.

. Even if the agents had been American, it is unlikely that they would have been required to preserve handwritten notes that were incorporated into a formal report on the same day that the interview took place. See United States v. Elusma, 849 F.2d 76, 79 (2d Cir. 1988); see also United States v. Barlin, 686 F.2d 81, 92 (2d Cir.1982) (*‘[A]ppellants do not question that the notes were made part of the agent’s formal report. That being the case, the notes need not have been preserved and their destruction violated no Jencks Act right.”).

. Vallee’s argument that the admission of the agents’ testimony, as well as that of the Canadian prosecutor, violated his due process rights is also without merit because the use of properly obtained and relevant statements that were more probative than prejudicial did not "violate!] those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community’s sense of fair play and decency.” Dowling v. United States, 493 U.S. 342, 353, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (internal quotation marks and citations omitted).