Eric THOMAS, Appellant,

v.

UNITED STATES, Appellee.

No. 11–CF–412.

District of Columbia Court of Appeals.

Argued March 20, 2013.

Decided Oct. 24, 2013.

As Amended Oct. 31, 2013.*

---

* This opinion is amended to correct a typographical error by adding the word "not" to the second paragraph, third sentence, immediately preceding the word "permitted".

Alice Wang, Public Defender Service, with whom James W. Klein, and Monica V. Douglas, Public Defender Service, were on the brief, for appellant.

David B. Goodhand, Assistant United States Attorney, with whom Elizabeth Trosman, Elizabeth H. Danello, and Christopher Kavanaugh, Assistant United States Attorneys, were on the brief for appellee.

Before WASHINGTON, Chief Judge, GLICKMAN, Associate Judge, and PRYOR, Senior Judge.

WASHINGTON, Chief Judge:

On January 27, 2010, a grand jury returned a five-count indictment charging appellant Eric Thomas ("Thomas") with assault with a dangerous weapon ("ADW")[1] of Chauncey Lamar, possession of a firearm during a crime of violence ("PFCV"),[2] unlawful possession of a firearm by a felon ("FIP"),[3] carrying a pistol without a license ("CPWL"),[4] and unlawful possession of ammunition ("UA").[5] Thomas moved for a bifurcated trial on the FIP count, and his motion was granted on August 23, 2010. On September 23, 2010, a jury acquitted Thomas of ADW and PFCV, but hung on CPWL and UA. The

---

1. D.C.Code § 22–402 (2001).

2. D.C.Code § 22–4504(b) (2001).

3. D.C.Code § 22–4503(a)(2) (2001).

4. D.C.Code § 22–4504(a) (2001).

5. D.C.Code § 7–2506.01(3) (2001).

trial court declared a mistrial on those counts and also on the FIP count.

The government sought to retry Thomas on the FIP, CPWL, and UA counts. Thomas moved to dismiss the CPWL and FIP counts on collateral estoppel grounds. The trial court denied the motion and ruled that the government was not permitted to introduce evidence of "unambiguously assaultive behavior."[6]  The government dismissed the CPWL count and proceeded on the FIP and UA counts. Following Judge Beck's ruling, Judge Epstein ruled that, because raising a gun over one's head was an "unambiguous . . . assaultive act," while pulling a gun out of one's pocket was not "inherently an assaultive act," the government could elicit testimony about the events leading up to the encounter, the words exchanged, and Mr. Thomas's act of grabbing the complainant and pulling out a gun, but not his act of raising the gun over his head. The jury convicted Thomas of both counts. Thomas appeals arguing that the jury in the first trial necessarily determined that he did not bring a gun to the altercation with brothers Chauncey and Christopher Lamar; therefore, collateral estoppel barred retrial on the FIP count. Alternatively, Thomas argues that the jury in the first trial at least decided that he did not pull out a gun during his encounter with the Lamar brothers, and therefore, collateral estoppel barred admittance of the evidence of assault in his second trial. We agree with Thomas' alternative argument and accordingly reverse his conviction for FIP.

## I.

On October 7, 2009, brothers Christopher and Chauncey Lamar encountered appellant Eric Thomas on their way home after visiting their older brother, Charles. According to the Lamar brothers, Thomas called out, "Chauncey," and Christopher told Thomas to leave Chauncey alone. Thomas replied, "I don't want to give you [the] same pain I am going to give [Chauncey]."  Thomas then grabbed Chauncey with his left arm, and pulled a gun out with his right hand.  Chauncey testified that Thomas raised the gun over his head and made a motion indicating he was trying to "pistol whip" him.  Christopher testified that Thomas just waved the gun around generally.  Christopher then tackled Thomas and all three struggled for control of the gun.  During the struggle, Thomas was shot in the hand.  The gun was later recovered from the scene.

## II.

██ We review *de novo* whether collateral estoppel bars relitigation of an issue. *United States v. Felder*, 548 A.2d 57, 65 (D.C.1988).  Collateral estoppel means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Joya v. United States*, 53 A.3d 309, 315 (D.C.2012) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)).  The defendant has the burden of demonstrating that "the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Halicki v. United States*, 614

---

6.  Judge Ronna L. Beck presided over Thomas' first trial and made this ruling pursuant to Thomas' alternative argument—that all "evidence of assaultive conduct" be excluded.  She left to Judge Anthony C. Epstein, who presided over Thomas' second trial, to decide which evidence the jury rejected in acquitting Thomas of ADW. Judge Epstein decided that the government could elicit testimony about the events leading up to the encounter with the Lamar brothers and pulling out the gun, but not anything about raising the gun up.

A.2d 499, 502 (D.C.1992) (quoting *Dowling v. United States*, 493 U.S. 342, 350, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)). To determine whether the issue has previously been determined by a verdict of not guilty, we "examine the record, taking into account the pleadings, evidence, instructions, closing argument and the like [to] conclude whether a 'rational jury' could have acquitted based on an issue other than the one the defendant seeks to bar from consideration." *Felder*, 548 A.2d at 67 (quoting *Ashe*, 397 U.S. at 444, 90 S.Ct. 1189) (internal quotation marks omitted) (noting also that the court should not strain to postulate "hypertechnical and unrealistic grounds on which the ... [jury could] conceivably have rested" its conclusions). "A review of the evidence presented at trial as well as the positions urged by the United States during trial is necessary to our *Ashe v. Swenson* analysis." *Id.* at 58.

■ In this case, Thomas' theory was that he did not have a gun that day, that he did not assault Chauncey, and that the Lamar brothers fabricated their account of what occurred. The government's theory throughout the trial was that Thomas, armed with a gun, confronted the Lamar brothers and assaulted Chauncey with the gun. The government principally relied on the testimony of the brothers to place the gun in Thomas' hand and to establish the assault.[7] The trial court instructed the jury that for ADW:

> [T]he Government must prove beyond a reasonable doubt ... that, one, the Defendant committed a threatening act that reasonably would create in another

person a fear of immediate injury; two, the Defendant acted voluntarily, on purpose and not by mistake or accident; three, at the time the Defendant had the apparent ability to injure the complainant; and four, the Defendant committed the threatening act with a dangerous weapon.

It further explained that "voluntarily pointing a dangerous weapon at another person in a threatening manner or voluntarily using it in a way that would reasonably create in the other person a fear of immediate injury would be an assault with a dangerous weapon." Consistent with these instructions, the government argued:

> [R]egardless of whether or not he swung, regardless of whether or not he started to swing, regardless if he carried it up above his head, exclude all that, if someone comes up to you, grabs your jacket and pulls out a gun, that in and of itself is an assault with a deadly weapon, because the very first element that Judge Beck read you is all it requires is a threatening act [sic] that would create in a reasonable person an immediate— fear of immediate harm. If someone grabs your jacket and pulls out a gun, that is all they need to do, much less pull it up above their head.

Regarding CPWL, the trial court instructed the jury that:

> [T]he government must prove beyond a reasonable doubt, ... that, one, the Defendant carried a pistol on or about his person; two, he did so voluntarily and on purpose and not by mistake or accident; three, the Defendant was not li-

---

7. The only other witnesses to the altercation, Katrina Lee and Officer Kimberly McHugh, did not see what occurred before the three men engaged in the struggle for the gun. Lee testified that she heard a gunshot, looked out the window, and saw three people rolling around on the ground grappling for some-

thing. Officer McHugh, who was patrolling the area, testified that she heard what she thought was a gunshot behind her and turned her patrol car around to investigate. When she exited her vehicle, she saw a man standing around and two other men wrestling on the ground.

censed to carry the pistol by the chief of police of the District of Columbia; and four, he carried the pistol in a place other than his home, place of business or land or premises possessed and controlled by him; five, the pistol could fire a bullet.

The government argued that there were five reasons that the jury could believe the Lamar brothers that Thomas brought the gun to the scene: (1) Thomas fled the scene when Officer McHugh arrived although he suffered a gunshot wound; (2) witness Katrina Lee corroborated the Lamar brothers' testimony about the struggle over the weapon on the ground; (3) Christopher called the police to report Thomas when he saw Thomas two days later, (4) Thomas waited until the next day to seek treatment for his gunshot wound and declined surgery because he "had things to do" even after having been warned what could happen if his hand was left untreated; and (5) the physical evidence in the case corroborated the Lamar brothers' testimony.[8]

Despite the above argument and the fact that Thomas did not challenge the government's contention that grabbing someone in a hostile manner while pulling out a gun constitutes an assault, the jury found Thomas not guilty of ADW and PFCV. Thus, we agree with Thomas that the jury's acquittal means that it at least rejected the Lamar brothers' account that Thomas pulled a gun out of his pocket during the altercation with the Lamar Brothers. Therefore the government should not have been permitted to introduce evidence that Thomas pulled out a weapon during his altercation with the La-

mar brothers when Thomas was retried for FIP. *See Joya,* 53 A.3d at 321–22; *Felder,* 548 A.2d at 67–69.

### III.

Accordingly, Thomas' conviction for FIP is

*Reversed and case is remanded for a new trial.*

---

8. The parties stipulated that Thomas was the source of DNA found on the left side of the gun and a major contributor of DNA found on the right side of the gun. Additionally, a week after the incident, the police found a box of nine millimeter ammunition, but no gun, in Thomas' bedroom. Finally, the shell casing recovered from the scene was the same type as the ammunition found in Thomas' home.