**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 28 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HENRY L. RUDOLPH,

      Petitioner - Appellant,

      v.

HANK GALETKA,

      Respondent - Appellee.

No. 03-4192

(D.C. No. 2:99-CV-371 TC)

(D. Utah)

**ORDER AND JUDGMENT** *

Before **HARTZ** , **McKAY** , and **PORFILIO** , Circuit Judges.

Henry L. Rudolph appeals the district court's dismissal of his application

for a writ of habeas corpus under 28 U.S.C. § 2254.  A judge of this court granted

a certificate of appealability (COA) on the issue whether the State of Utah

violated Mr. Rudolph's Fifth Amendment guarantee against double jeopardy

(applied to the States under the Fourteenth Amendment) by subjecting him to

three trials.  Mr. Rudolph's double-jeopardy claims stem from the State's retrying

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

him for aggravated burglary after the jury at his first trial acquitted him of aggravated sexual assault (but convicted him of aggravated burglary and violating a protective order), and from alleged prosecutorial misconduct that may have led to the mistrial at his second trial. We exercise jurisdiction under 28 U.S.C. § 2253 and affirm. We also deny a COA on all other issues raised in Mr. Rudolph's habeas application.

## I. BACKGROUND

### A. Facts

We summarize the facts recited in the Utah Supreme Court's opinion on the second direct appeal in this case, State v. Rudolph, 970 P.2d 1221, 1224-25 (Utah 1998): On August 1, 1994, Mr. Rudolph, while the subject of a spousal protective order, broke into the residence of his estranged wife through a basement window. When she returned, Mr. Rudolph was waiting for her with a large knife in his pocket. Upon learning that she was dating a co-worker, he punched her several times and pushed her onto the sofa.

Mr. Rudolph produced the knife and forced her to disrobe during the course of a 20-minute tirade. When he finished berating and threatening her, he ordered her into the bathroom and forced her to shower while he watched. He then put down the knife, disrobed, and joined her in the shower. Once inside the shower, Mr. Rudolph demanded that his estranged wife wash his genitals and perform oral

sex on him. He then ordered her to lie down in the tub, and engaged her in sexual intercourse. After the encounter in the bathtub, Mr. Rudolph again forced sexual intercourse in the bedroom. His estranged wife eventually was able to contact the police. Upon learning what she had done, Mr. Rudolph attempted to strangle her and threatened to kill himself. He fled as the police arrived but was apprehended near the home.

*B. State Court Proceedings*

Mr. Rudolph was charged by information in Utah state court with two felonies, aggravated burglary and aggravated sexual assault, and one misdemeanor, violation of a protective order. At trial Mr. Rudolph represented himself with the assistance of standby counsel. The jury acquitted him of aggravated sexual assault, but convicted him of aggravated burglary and violation of a protective order. On appeal the Utah Supreme Court vacated the two convictions and remanded for retrial because portions of the trial transcript had been lost as the result of a problem with the court reporter's computer.

After undergoing a competency evaluation Mr. Rudolph was permitted to represent himself again at the second trial. On the first day of the trial, he twice moved for a mistrial in the presence of the jury. He made the second motion during the prosecution's redirect examination of the victim about statements she had made to Mr. Rudolph's probation officer; Mr. Rudolph believed that this line

of questioning violated the Utah rules of evidence.  Mr. Rudolph told the court that he believed the entire trial had been unfair and asked that the judge recuse himself.  The court granted the mistrial, stating, "because of the defendant's repeated insinuation and accusation that this court is incapable of giving him a fair trial, then, in fairness to the defendant, we will grant his motion for a mistrial, and we will start over."  R., Vol. III, Doc. 66, Addendum at 4-5.

Although the judge also granted Mr. Rudolph's motion to recuse, he remained involved in the case and presided over proceedings in anticipation of a third trial.  Counsel was appointed to represent Mr. Rudolph at trial.  Five days before the scheduled trial date, Mr. Rudolph filed a pro se motion that the judge recuse himself.  On the day of trial, the judge informed the parties that he would refer the recusal motion to the presiding judge.  Both Mr. Rudolph and his counsel, however, responded that they wished the trial to proceed without further delay and therefore withdrew the motion.  The jury at the third trial convicted Mr. Rudolph of aggravated burglary and violation of a protective order.

On appeal to the Utah Supreme Court Mr. Rudolph raised seven issues through counsel – (1) the judge gave erroneous instructions on the intent element of burglary, (2) the judge gave an erroneous instruction on the "remaining unlawfully" element of burglary,  (3) there was insufficient evidence to support the aggravated-burglary conviction, (4) the judge failed to respond to a jury

question during deliberations, (5) the judge improperly presided over the third trial after recusing himself during the second, (6) his convictions were barred by double jeopardy, and (7) there was insufficient evidence of violation of a protective order. Mr. Rudolph also filed a pro se brief contending that he was the victim of prosecutorial misconduct. The Utah Supreme Court rejected these arguments and affirmed the convictions.

On state-court post-conviction review, Mr Rudolph raised four issues that he had failed to raise on direct appeal – (1) that issues raised for the first time on post-conviction review merited consideration because of unusual circumstances, (2) that the Utah burglary statute was unconstitutionally vague, (3) that he was denied the right to self-representation, and (4) that he was denied effective assistance of counsel. The state trial court denied relief and the state supreme court affirmed. See Rudolph v. Galetka, 43 P.3d 467 (Utah 2002).

*C. Federal Habeas Proceedings*

Mr. Rudolph's initial pro se habeas application, filed in the United States District Court for the District of Utah on May 27, 1999, was dismissed without prejudice on May 23, 2000, for failure to exhaust state-court remedies. After the denial of his state-court petition for post-conviction relief (filed while the initial federal habeas proceedings were ongoing), Mr. Rudolph, again proceeding pro se, filed a motion that the district court construed as a motion to reconsider its

May 23, 2000, Order. The court granted the motion on the ground that Mr. Rudolph had now exhausted his state remedies, so the case could be considered on the merits.

On July 22, 2003, the district court denied the application. It found seven of the ten issues raised in the application procedurally barred: (1) that the jury instructions were unconstitutionally vague, (2) that he was denied a unanimous verdict, (3) that the Utah burglary statute is unconstitutionally vague, (4) that the information charging him was unconstitutionally over-broad, (5) that he was denied the right to represent himself, (6) that he received ineffective assistance of counsel, and (7) that he was the victim of judicial bias. It rejected on the merits the other three arguments: (1) violation of the guarantee against double jeopardy, (2) insufficiency of the evidence, and (3) prosecutorial misconduct. (Mr. Rudolph's application actually enumerated 12 arguments, but the district court considered two of them under "double jeopardy" and two under "insufficient evidence.")

The district court did not address Mr. Rudolph's request for a COA; hence on August 27, 2003, this court entered a presumption of denial of a COA by the district court. A judge of this court granted a COA on the double-jeopardy arguments raised in the habeas application and appointed counsel to file a supplemental brief. The State has filed a supplemental brief responding to

-6-

counsel's arguments.  Appointed counsel also filed a motion to remand the proceedings to the district court for reconsideration of Mr. Rudolph's double-jeopardy arguments in light of the entire record.

## II.  DISCUSSION

### A.  Double Jeopardy

#### 1.  Standard of Review

"[W]e review the [federal] district court's factual findings under a clearly erroneous standard and its legal conclusions de novo." Morris v. Burnett, 319 F.3d 1254, 1268 (10th Cir. 2003) (internal quotation marks omitted).  In addition, in § 2254 proceedings the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires substantial deference to determinations by the state courts. Here, the Utah Supreme Court reached the merits of Mr. Rudolph's double-jeopardy arguments.  In this circumstance, a writ of habeas corpus is inappropriate

> unless the [state court's] adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d). Mr. Rudolph, through counsel, asserts that "[t]his case involves only the 'unreasonable application' prong of this standard." Aplt. Supp. Br. at 30.

According to the United States Supreme Court, "Under the 'unreasonable application' clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 413 (2000). We are aware, however, that "[t]he Supreme Court has cautioned that an *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law." Valdez v. Bravo, 373 F.3d 1093, 1096 (10th Cir. 2004) (internal quotation marks omitted).

As for our review of the state courts' findings of fact, because Mr. Rudolph is "in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id.

*2. Merits*

Mr. Rudolph contends that his constitutional guarantee against double jeopardy was twice violated in the state court proceedings. The first alleged

violation consisted of retrying him for aggravated burglary after the jury in the first trial acquitted him of aggravated sexual assault. Mr. Rudolph asserts that the jury acquitted him of aggravated sexual assault because it found that the sexual acts with his estranged wife were consensual, thereby negating any intent to commit a sexual assault. Under the doctrine of collateral estoppel, the first jury's finding on the question of intent could not be relitigated. Thus, Mr. Rudolph argues, he could not be retried for aggravated burglary, because the information alleged that he committed the offense by unlawfully entering or remaining in his estranged wife's residence with the intent to commit a sexual assault.

The second alleged violation was subjecting him to a third trial after the court granted a mistrial at the second trial. Mr. Rudolph contends that the trial court granted the mistrial due to improper statements intentionally made by the prosecutor with the intent of provoking a mistrial, rendering another trial on the same charges impermissible.

Mr. Rudolph's appointed counsel also argues that the district court could not adequately consider his double-jeopardy arguments without requesting, sua sponte, the entire record of state trial proceedings.

### a. Collateral Estoppel

On direct appeal the Utah Supreme Court began its consideration of Mr. Rudolph's collateral estoppel argument by noting the relevant United States

Supreme Court decisions, Ashe v. Swenson, 397 U.S. 436 (1970), and Dowling v. United States, 493 U.S. 342 (1990). See Rudolph, 970 P.2d at 1231. The Court wrote in Ashe:

> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, [the proper] approach requires a court to examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.

Ashe, 397 U.S. at 444 (internal quotation marks omitted). Dowling provides that "the burden [is] on the defendant to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." Dowling, 493 U.S. at 350.

The Utah Supreme Court concluded that "the jury could have acquitted Rudolph [of aggravated sexual assault] on another basis that is just as reasonable" as the victim's consent. Rudolph, 970 P.2d at 1232. Under Utah law:

> A person commits aggravated sexual assault if in the course of a rape or attempted rape, object rape or attempted object rape, forcible sodomy or attempted forcible sodomy, or forcible sexual abuse or attempted forcible sexual abuse the actor:
>
> (a) causes bodily injury to the victim;
>
> (b) uses or threatens the victim with use of a dangerous weapon as defined in Section 76-1-601;

-10-

(c) compels, or attempts to compel, the victim to submit to rape, object rape, forcible sodomy, or forcible sexual abuse, by threat of kidnapping, death, or serious bodily injury to be inflicted imminently on any person; or

(d) is aided or abetted by one or more persons.

Utah Code Ann. § 76-5-405(1) (1995). Thus, for rape or forcible sodomy to constitute aggravated sexual assault, the assailant must (1) injure the victim, (2) threaten the victim with a dangerous weapon, (3) threaten the victim with kidnaping, death, or serious injury, or (4) have a confederate.

The Utah Supreme Court focused on statements made by Mr. Randolph's standby counsel during closing arguments at the first trial. According to the court, counsel attacked the State's proof on the aggravating-circumstances element of the aggravated-sexual-assault charge:

> First, he [standby counsel] asserted that when Rudolph entered the shower, he no longer had the knife with him; it was sitting on the counter. Second, he pointed out that there was no evidence that Rudolph threatened to kill or harm the victim while he was in the shower with her or during intercourse in the bedroom. Finally, he maintained that the evidence did not show that Rudolph caused bodily injury or harm to the victim during the sexual acts.

Rudolph, 970 P.2d at 1232. Hence, the court held, "Rudolph cannot show that the jury necessarily acquitted him of aggravated sexual assault on the basis that he lacked the requisite intent. The acquittal may have been based on the lack of . . . aggravating circumstances. Collateral estoppel therefore did not preclude his aggravated burglary conviction." Id.

Mr. Rudolph's appointed counsel now contends that the district court could not adequately review the Utah Supreme Court's application of federal law to the facts of the case without having the complete record from the first trial before it. He argues, "Given that the parties disagreed on the arguments made in the summation, the federal court could not possibly say that the Utah Supreme Court's conclusion that the summation belied Mr. Rudolph's argument was objectively reasonable." Aplt. Supp. Br. at 24-25. Appointed counsel asserts that the district court should have ordered the record from the first trial sua sponte, and that because it did not, this court should remand the case for reconsideration in light of the entire record.

We disagree. Mr. Rudolph provided no reason for the district court to view the record. If the Utah Supreme Court accurately described the closing arguments by Mr. Rudolph's trial counsel, then the collateral-estoppel argument has no merit. Yet Mr. Rudolph did not challenge that description in district court, nor did he challenge in his reply brief on direct appeal of his conviction a virtually identical description of standby counsel's closing arguments set forth in the State's answer brief. We have no reason to doubt the Utah Supreme Court's finding that standby counsel attacked the aggravating-circumstances element. Mr. Rudolph has not even begun to show by clear and convincing evidence, as

-12-

required by 28 U.S.C. § 2254(e)(1), that the Utah Supreme Court erred in its recitation of facts.

According to the rules governing habeas applications under § 2254, it is within the district court's discretion whether to order transcripts not provided by the respondent. See Rules Governing Section 2254 Cases in the United States District Courts, Rule 5 ("The court on its own motion or upon request of the petitioner *may* order that further portions of the existing transcripts be furnished . . . ." (emphasis added)); see also Simental v. Matrisciano, 363 F.3d 607, 612 (7th Cir. 2004) ("While the review of a state court transcript is occasionally necessary in habeas cases, it is certainly not required and is, in fact, quite rare."). The district court did not abuse its discretion here.

We conclude, as did the federal district court, that Mr. Rudolph has not demonstrated that the Utah Supreme Court unreasonably applied federal law in rejecting his collateral-estoppel argument.

### b.  Trial After Mistrial

For his prosecutorial-misconduct double-jeopardy argument, Mr. Rudolph relies on the proposition that "a defendant may invoke the bar of double jeopardy in a second effort to try him [if] the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." Oregon v. Kennedy, 456 U.S. 667, 679 (1982); accord United States v. Gonzalez,

248 F.3d 1201, 1203 (10th Cir. 2001). In Mr. Rudolph's direct appeal the Utah Supreme Court stated that "the only question we must decide [to resolve this double-jeopardy argument] is whether the prosecution or the trial judge intentionally provoked a mistrial for purposes of affording the State another opportunity to convict Rudolph." Rudolph, 970 P.2d at 1232. The court found that "[t]he record . . . shows that Rudolph himself opened the door into the very questioning that he now claims was prejudicial and warranted the mistrial." Id. It also noted that in granting the mistrial, "[t]he [trial] court did not even allude to any misconduct by the prosecutor as a basis for the mistrial." Id. The Utah Supreme Court held that "[i]n light of the foregoing, Rudolph cannot demonstrate that the judge or the prosecutor provoked the mistrial, let alone that they did so intentionally." Id.

Although Mr. Rudolph quotes the portion of the trial transcript that includes the questioning to which he objected and the discussion regarding whether to grant a mistrial, he fails to provide clear and convincing evidence that prosecutorial misconduct aimed at provoking a mistrial was the basis for the trial court's grant of Mr. Rudolph's motion for a mistrial. See 28 U.S.C. § 2254(e)(1). Nor has he suggested where such evidence might appear in the trial record. Thus, we agree with the district court that habeas relief is unavailable on this ground.

*B. Other Grounds Raised in Habeas Application*

A judge of this court granted a COA on the issue whether Mr. Rudolph was subjected to double jeopardy. This panel must now determine whether he is entitled to a COA on any other issue raised in his habeas application. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To be entitled to a COA on the two issues (insufficiency of the evidence and prosecutorial misconduct) "[w]here [the] district court has rejected [his] constitutional claims on the merits," Mr. Rudolph "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This court has determined that because "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of a habeas [applicant's] request for COA," Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004), we will grant a COA "only if reasonable jurists could debate whether the [applicant] might be eligible for habeas relief – i.e., . . . whether the state court's decision on the merits of the [applicant's] constitutional claim was unreasonable or ran contrary to clearly established federal law," id. at 937. To be entitled to a COA on the seven issues that the district court found procedurally barred, Mr. Rudolph must "show[], at least, that jurists of reason would find it debatable whether the [application] states a valid claim of the denial of a constitutional right and that

jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

We recognize that in determining whether to issue a COA, a "full consideration of the factual or legal bases adduced in support of the claims" is not required. Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Instead, the decision must be based on "an overview of the claims in the habeas [application] and a general assessment of their merits." Id.

After reviewing Mr. Rudolph's brief, we conclude that he has failed to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims [of insufficiency of the evidence and prosecutorial misconduct] debatable or wrong." Slack, 529 U.S. at 484. Regarding the seven claims that the district court found procedurally barred, we conclude that he has failed to "show[], at least, that jurists of reason would find it debatable whether the [application] states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

We will not consider any issues contained in Mr. Rudolph's appellate brief that were not presented to the district court. See Walker v. Mather (In re Walker), 959 F.2d 894, (10th Cir. 1992). For substantially the same reasons provided in the district court's July 22, 2003, Order, we deny Mr. Rudolph's

request for a COA on the issues other than double jeopardy raised in his habeas application.

## III.  CONCLUSION

We AFFIRM the district court's order dismissing Mr. Rudolph's habeas application.  We DENY a COA on all grounds other than double jeopardy raised in the application.  Mr. Rudolph's motion to remand the case to the district court for reconsideration based on the entire record, or to supplement the record on appeal, is DENIED.  We DENY the motion to disqualify Judge Murphy (filed 6/25/04) and the August 18, 2004, motion tendering Mr. Rudolph's pro se pleading.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge