OPINION
{¶ 1} The instant appeal has been taken from a judgment of the Lake County Court of Common Pleas. Appellant, Rogelio Flores, seeks the reversal of his conviction on one count of gross sexual imposition and the separate determination that he should now be considered a sexual predator. In regard to both, appellant maintains that the evidence presented at his trial did not support the factual findings upon which the decisions were based.
 {¶ 2} Prior to April 2001, appellant had resided with his immediate family for nearly ten years in Oxnard, California. At some point before that date, appellant's wife, Yolanda Flores ("Yolanda"), had discovered that he had been engaged in an extramarital affair with a woman by whom he had had a separate child. In an attempt to save their marriage, appellant and Yolanda decided to move with their two children to Painesville, Ohio. This city was chosen because many of appellant's relatives lived in Lake County.
 {¶ 3} Initially, appellant and his family moved into a small apartment which was already being leased by his parents. Because the apartment only had two bedrooms, it became necessary for all four members of appellant's family to sleep in one room, with appellant and Yolanda using one bed and the two children in another. Appellant's parents used the second bedroom, while his brother slept in the living room.
 {¶ 4} Within a few days after their arrival in Painesville, Yolanda's father passed away in Mexico. As a result, Yolanda took the couple's young son and flew to Mexico for the funeral. She was away from their apartment for approximately eight days. During this time period, appellant shared their bedroom solely with the couple's daughter, who was thirteen years old at that time. At one point during her absence, Yolanda spoke to her daughter on the telephone and noted that the girl appeared to be crying. As part of their brief conversation, the daughter told Yolanda that she missed her terribly.
 {¶ 5} Approximately sixty days after moving to Painesville, appellant decided to return to California and live with his girlfriend. A short time later, appellant and Yolanda were able to sell the condominium which they had owned prior to coming to Ohio. Yolanda then used a portion of the proceeds to purchase a trailer in Madison, Ohio, which is also located in Lake County. Accordingly, she and the children moved from the Painesville apartment during the summer of 2001, and began to live in their new residence.
 {¶ 6} In early September 2001, appellant moved back from California and was able to obtain a new job in a factory. During the ensuing five months in which he lived with his family in the trailer, Yolanda noticed that their daughter seemed to stay in her bedroom more whenever appellant was at home. However, other family members thought that the daughter remained just as affectionate toward her father as she had been prior to the original move to Ohio. Because there were no definite signs of problems between appellant and his daughter during this time period, appellant continued to reside in the trailer until he again went back to California in January 2002.
 {¶ 7} At some point during the spring of 2002, appellant's daughter told a school friend that her father had engaged in improper sexual behavior toward her on many occasions over the prior twelve months. Since the daughter asked her friend to keep this matter a secret, no adult was informed of the allegations at that particular time. Nevertheless, in May 2002, the daughter was participating in a special health class in which the female students were allowed to submit anonymous questions about sexual issues. As part of her question, the daughter asked if it was appropriate for a father to have "sex" with his child. In light of the nature of the question, the teacher of the health class told the girls that the writer of that question would have to take responsibility for it; as a result, the daughter revealed her identity to the teacher. Still, when pressed by the teacher to say why she would raise such a question, the daughter only indicated that she had been inquiring in behalf of someone else.
 {¶ 8} Even though the daughter did not tell her teacher of her allegations, she did talk to a second friend about the problems she had had with appellant. While the daughter also asked the second friend to keep the matter a secret, her two friends had a separate discussion on the matter and decided to inform a second teacher about the allegations without the daughter's consent. Ultimately, the school principal was told of the matter, and Yolanda was called to the school. Once the daughter had been confronted with the statements she had made to her friends, she then informed her mother of her specific allegations against her father.
 {¶ 9} Because the daughter had made separate assertions as to improper behavior on the part of appellant at two different residences in Lake County, two police departments investigated the matter. In her separate statement to the police, the daughter said that, on many occasions at both the Painesville apartment and the Madison trailer, appellant had kissed her on the lips while touching her breasts and genitals. She further said that even though other individuals had sometimes been in the residences when the acts had occurred, appellant had often placed his hand over her mouth and had told her that he would harm her mother or her brother if she tried to tell anyone about what was taking place. In addition, the daughter indicated that, although appellant had only touched her in most instances, he had once forced her at the trailer to engage in oral sex.
 {¶ 10} Approximately one year after the primary investigation into this matter, the Lake County Grand Jury issued a six-count indictment against appellant in July 2003. The first five counts charged appellant with gross sexual imposition under R.C. 2907.05(A), a fourth-degree felony, while the sixth count charged him with the first-degree felony of rape under R.C. 2907.02(A). The first count of gross sexual imposition contained the allegation that appellant had engaged in sexual contact with the victim against her will at some point between April 28, 2001, and May 5, 2001. This time frame corresponded to the period Yolanda had been in Mexico for her father's funeral.
 {¶ 11} A four-day jury trial was held in December 2003. As part of her testimony for the state, the victim stated that appellant first had sexual contact with her the second night after her mother had left. According to the victim, the contact took place in the bedroom as she was trying to go to sleep. She further testified that appellant had been drinking beer immediately before the contact, and that she had not been able to call out to any other person in the apartment because appellant covered her mouth with his hand. As to the sexual contact, the victim stated that appellant had placed his hand under both the top and bottom of her pajamas.
 {¶ 12} In addition to this first incident, the victim stated that appellant had contact with her on at least two other occasions before her mother returned from Mexico. She also stated that, even after her mother's return, appellant continued to have periodic sexual contact with her until he left for California in June 2001. Finally, she testified that similar incidents took place during the five-month period when appellant lived in the trailer upon returning to Ohio in the fall of 2001.
 {¶ 13} In response to the state's case, appellant tried to challenge the victim's credibility by showing certain inconsistencies between her testimony and her prior statements to the police. For example, appellant's trial counsel was able to show that the victim gave different versions as to the time of day the sexual contact had occurred during the week her mother was gone. Appellant also presented evidence which tended to establish that the victim had been upset with him for having a girlfriend, and may have contrived the allegations against appellant so that she did not have to live with him in California.
 {¶ 14} As part of its general verdict, the jury expressly found appellant guilty of the first charge of gross sexual imposition. As was noted above, this particular count pertained to the sexual contact which had occurred while Yolanda, the victim's mother, was away in Mexico for one week. However, as to the remaining five charges, the jury returned a verdict of not guilty.
 {¶ 15} Prior to sentencing appellant on the sole conviction, the trial court conducted a separate proceeding to determine if he should be declared a sexual predator. As part of this proceeding, the state introduced the report of a psychologist who had interviewed appellant. In this report, the psychologist indicated that the risk of appellant committing another sexual offense was low. Yet, the psychologist also concluded that he satisfied the requirements for pedophilia, and that he should not have any unsupervised contact with any children. Finally, the psychologist found that appellant met certain criteria for alcohol substance abuse.
 {¶ 16} Upon considering the various factors set forth under R.C. 2950.09(B)(2), the trial court held that appellant should be designated as a sexual predator. The trial court also sentenced him to a prison term of six months on the single conviction for gross sexual imposition.
 {¶ 17} In now appealing the foregoing conviction to this court, appellant has assigned the following as error:
 {¶ 18} "[1.] The evidence was insufficient to sustain the finding that appellant was a sexual predator.
 {¶ 19} "[2.] Appellant's single conviction is against the manifest weight of the evidence."
 {¶ 20} In challenging the trial court's "sexual predator" determination under this appeal's first assignment, appellant essentially contends that two of the findings the court cited in support of its determination were contradicted by the evidence. First, he maintains that, since he was only convicted of a single count of gross sexual imposition, the trial court could not find that he had a "history" of engaging in abusive sexual behavior. Second, he submits that the psychologist's finding of pedophilia should have been rejected by the court because it was based upon the incorrect "fact" that he had engaged in abusive behavior for a six-month period.
 {¶ 21} Pursuant to R.C. 2950.01(E), a criminal defendant can only be declared a sexual predator when he has been convicted of a sexually oriented offense, and it is likely that he will commit one or more sexually oriented offenses in the future. In order for a trial court to properly make such a declaration, it must expressly find that both of the criteria have been demonstrated by clear and convincing evidence. SeeState v. Murphy, 11th Dist. No. 2003-L-049, 2005-Ohio-412, at ¶ 38.
 {¶ 22} In the instant case, the first criterion was readily established because appellant was found guilty of gross sexual imposition by the jury. Thus, the sole issue before this court is whether there was clear and convincing evidence to support the trial court's conclusion that appellant is likely to engage in improper sexual behavior in the future.
 {¶ 23} R.C. 2950.09(B)(2) sets forth a list of factors which a trial court must consider in making its determination on the "recidivism" question. This court has summarized these various factors in the following manner: "`These factors include: (1) the offender's age; (2) the offender's prior criminal record; (3) the age of the victim; (4) whether the sexually oriented offense for which sentence was imposed involved multiple victims; (5) whether the offender used drugs or alcohol to impair the victim or to prevent the victim from resisting; (6) whether the offender has participated in available programs for sexual offenders; (7) any mental illness or mental disability of the offender; (8) the nature of the offender's conduct and whether that conduct was part of a demonstrated pattern of abuse; (9) whether the offender displayed cruelty during the commission of the crime; and (10) any additional behavioral characteristics that contributed to the offender's conduct.'" State v. Faehner, 11th Dist. No. 2001-L-212, 2002-Ohio-5148, at ¶ 8, quoting State v. Swank (Dec. 21, 2001), 11th Dist. No. 98-L-049, 2001 Ohio App. LEXIS 5846, at 5.
 {¶ 24} In considering the foregoing factors, this court has indicated that a majority of the factors do not have to exist in a particular case in order for a trial court to properly make a finding of recidivism. Instead, so long as the circumstances of a case show by clear and convincing evidence that the defendant is likely to commit another sexually oriented offense in the future, the "recidivism" finding can be predicated solely on the presence of one factor in the case. See State v.Pierce, 11th Dist. No. 2002-L-132, 2003-Ohio-5864, at ¶ 11.
 {¶ 25} In reviewing the "recidivism" determination on appeal, an appellate court cannot engage in a de novo exercise as to the weighing of the evidence. Faehner, 2002-Ohio-5148, at ¶ 6. Rather, an appellate court must review the evidence in the same manner as is used in determining the propriety of the conviction itself; i.e., a "manifest weight" analysis. In relation to the standard of review for a "sexual predator" decision, this court has stated:
 {¶ 26} "Clear and convincing evidence is more than a mere preponderance of the evidence, yet does not rise to the level of evidence beyond a reasonable doubt. * * * Clear and convincing evidence is evidence which `"produces in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."' * * * Thus, `"* * * a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof."' * * *
 {¶ 27} "The Supreme Court of Ohio has indicated that appellate courts use a manifest weight standard to review a trial court's finding that an offender is a sexual predator. * * * An appellate court's role in a manifest weight inquiry `* * * is to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."' * * * Thus, if the trial court's finding that an offender is a sexual predator is supported by the weight of the evidence, then the court must also have had sufficient evidence before it to satisfy the requisite clear and convincing degree of proof. Therefore, when reviewing questions of weight, an appellate court must determine whether the state appropriately carried its burden of persuasion by engaging in a limited weighing of the evidence." (Citations omitted). State v. Arnold,
11th Dist. No. 2002-L-026, 2003-Ohio-1976, at ¶ 25-26.
 {¶ 28} In the instant case, as part of the separate proceeding on the "sexual predator" issue, the trial court stated on the record that its determination that appellant was likely to commit another sexual offense in the future was based on the following:
 {¶ 29} "In making its decision, the Court has considered the factors in 2950.09. These consist of (a), the offender's age was 33 or 34, somewhat lowering the risk of re-offending; (b) Mr. Flores has no prior criminal record; (c) the victim, * * * was 12 or 13 years of age at the time of the offense for which Mr. Flores was convicted; (d), there were not multiple victims. Only one victim, * * *; (e) there was an amount of force used in covering [the victim's] mouth to prevent her from making noise or screaming; (f) Mr. Flores has no prior sex offense and no sex offender treatment history; (g) Mr. Flores does qualify for pedophilia; (h) there was a demonstrated pattern of abuse in this particular case. * * * And (i) there is no evidence of any physical abuse or death threats; and (j) which we will define as anything which might affect the Court's decision, the young lady testifying of the sexual abuse was Mr. Flores' natural daughter."
 {¶ 30} After the trial court had finished the foregoing statement, appellant's trial counsel respectfully objected to the finding of a demonstrated pattern of abuse. Specifically, trial counsel argued that such a finding was against the weight of the evidence because the jury had returned a conviction on only one of the six sexual offenses charged under the indictment. In response, the trial court simply noted that, in regard to the count of which appellant was convicted, the indictment had stated that the sexual contact had occurred over an eight-day period beginning in April 2001. The trial court further noted that none of the remaining five charges had pertained to that eight-day period.
 {¶ 31} Although not expressly stated by the trial court in its response to the objection of trial counsel, it is readily apparent that the trial court was referring to the fact, as part of her trial testimony, the victim asserted that appellant had touched her inappropriately on at least three occasions during that eight-day period. Furthermore, it is apparent that the trial court concluded that, even though the indictment also contained only one count of gross sexual imposition pertaining to that period, the victim's assertions in relation to other inappropriate sexual acts could be considered in deciding whether there had been a pattern of sexual abuse. Upon reviewing the relevant legal authority on this point, this court holds that the trial court did not err in reaching this conclusion.
 {¶ 32} Regarding this particular issue, this court would first indicate that, in light of the fact that a "sexual predator" proceeding is similar in nature to a sentencing hearing or a probation hearing, the Ohio Rules of Evidence do not strictly apply. See State v. Cook (1998),83 Ohio St.3d 404, 425. Second, we would note that R.C. 2950.09(B)(3)(b) states that, in determining whether an offender is likely to commit a future sexual crime, a trial court can consider his "prior criminal * * * record regarding all offenses, including, but not limited to, all sexual offenses[.]" In interpreting the foregoing statute, one appellate court has held that the broad nature of the language supports the conclusion that the General Assembly intended for a trial court to be able to consider an offender's entire criminal history, including any charge which did not result in a conviction. See State v. Shough, 2d Dist. No. 20531, 2005-Ohio-661, at ¶ 25. The Slough court also concluded that its interpretation of the statute was supported by the fact that an acquittal on a prior charge can still be probative on the question of whether it is likely that the offender will commit new sexual crimes.
 {¶ 33} Even though they have not necessarily adopted the Slough
analysis, other Ohio appellate courts have similarly held that a trial court is allowed to consider acquittals on prior criminal charges in making the "sexual predator" determination. For example, in State v.Childs (2001), 142 Ohio App.3d 389, the Eighth Appellate District first indicated that, pursuant to Dowling v. United States (1990), 493 U.S. 342, an acquittal does not act as a bar to the relitigation of a factual question in a different proceeding if the state's burden of proof is lower than what it had been in the criminal case. Based on this, theChilds court stated that, because the state's burden in a "sexual predator" proceeding is only clear and convincing evidence, the testimony underlying the "acquittal" charge can be reviewed for purposes of deciding the likelihood of the commission of a new offense. Childs,
at 392, quoting State v. Anderson (1999), 135 Ohio App.3d 759.
 {¶ 34} While the Shough and Childs precedent pertains primarily to the consideration of acquittals on prior criminal charges, logic dictates that the legal analyses of both cases would apply to testimony concerning crimes which were never charged. To this extent, this court holds that the trial court in the instant action did not err when it predicated its "pattern of abuse" finding upon the victim's trial testimony as to the additional acts which had occurred during the eight-day period in which her mother was away with her brother in Mexico. Moreover, we have previously indicated that the commission of at least two sexual offenses within a short period of time is sufficient to establish a pattern of abuse which is relevant to the sexual predator determination. SeeArnold, 2003-Ohio-1976, at ¶ 30. Therefore, the record before this court contains sufficient evidence to support the trial court's finding that appellant had engaged in a pattern of abuse toward the victim.
 {¶ 35} As a separate argument under his first assignment, appellant submits that it was improper for the trial court to rely on the psychologist's conclusion that he satisfied the criteria for being a pedophile. In support of this argument, appellant emphasizes that, in his report, the psychologist based this conclusion on the "fact" that he had engaged in sexual behavior with the victim for a period of over six months. In light of this, appellant contends that, since the reference to "six months" shows that the psychologist based his "pedophile" conclusion in part upon the five charges of which he was acquitted, the trial court should have rejected that conclusion.
 {¶ 36} As to this point, this court would again indicate that, under the Shough and Childs precedent, a trial court is permitted to consider acquittals on other "sexual" charges as part of weighing exercise for deciding the "recidivism" question. If such information can be considered by a trial court, it follows that a psychiatric professional can consider it in rendering an expert opinion for the court's review. Shough,2005-Ohio-661, at ¶ 25-26.
 {¶ 37} Pursuant to the foregoing discussion, this court ultimately holds that each of the trial court's findings pertaining to its "sexual predator" determination was supported by evidential materials which were properly before the trial court for consideration. As was stated previously, a review of the trial record demonstrates that the trial court's decision to designate appellant as a sexual predator was based upon the following findings: (1) the victim in this case was below the age of fourteen when the offense was committed; (2) the victim was appellant's natural daughter; (3) appellant used some force during the commission of the offense; (4) appellant's actions under the first count of which he was convicted constituted a pattern of abuse; and (5) appellant met the criteria for pedophilia. The foregoing findings by the trial court support its conclusion without any necessary reliance on the broader predicate employed by the psychologist as to a pattern of abuse.
 {¶ 38} After considering these findings in the context of the entire trial record, we further conclude that there was clear and convincing evidence that appellant would be likely to commit a new sexual crime in the future. In regard to the first two findings, it should be noted that the courts of this state have emphasized that these two factors are entitled to significant weight as part of the "sexual predator" determination:
 {¶ 39} "The age of the victim is probative because it serves as a telling indicator of the depths of offender's inability to refrain from such illegal conduct. The sexual molestation of young children, aside from its categorization as criminal conduct in every civilized society with a cognizable criminal code, is widely viewed as one of the most, if not the most, reprehensible crimes in our society. Any offender disregarding this universal legal and moral reprobation demonstrates such a lack of restraint that the risk of recidivism must be viewed as considerable. * * *
 {¶ 40} "Additionally, with regard to sexual activity with a stepdaughter, we have previously discussed that, given the `deeply ingrained and powerful social prohibitions against both incest and sexual relations with young children, the trial court could properly conclude that appellant's compulsion to commit these kinds of sexual offenses was deeply ingrained and that he was likely to re-offend.' * * *" (Citations omitted.) State v. Hendricks (June 28, 2001), 10th Dist. No. 00AP-1374, 2001 Ohio App. LEXIS 2867, at 8-9, quoting State v. Davis (Aug. 10, 2000), 10th Dist. No. 00AP-12, 2000 Ohio App. LEXIS 3572.
 {¶ 41} Consistent with the foregoing general principles, the record in the instant case establishes that appellant was willing to take a considerable risk when he committed the underlying offense. For example, the victim's testimony indicated that other members of appellant's family were present in other rooms of the apartment when the sexual contact took place. In addition, the record shows that appellant was willing to use force in order to complete the inappropriate act. Thus, taken as a whole, the evidential materials before the trial court demonstrated that appellant did not have the ability to control his behavior; in turn, this inability supported the conclusion that he was likely to commit a future sexual offense.
 {¶ 42} Based upon this analysis, this court rejects appellant's assertion that the trial court's decision to designate him as a sexual predator was not supported by sufficient evidence. Accordingly, the first assignment of this appeal is without merit.
 {¶ 43} Under his second assignment, appellant submits that his sole conviction must be reversed because the jury verdict was against the manifest weight of the evidence. In essence, he argues that the trial testimony of the victim was simply too unbelievable to warrant the conviction. As the basis for this argument, appellant asserts that there were numerous inconsistencies between the victim's trial testimony and her prior statements to police officers. He also states that, since the jury rejected the majority of the victim's testimony, it was illogical for it to accept her version of the events pertaining to the first count of gross sexual imposition.
 {¶ 44} As a general proposition, a criminal conviction will not be reversed on the basis of manifest weight when the record contains substantial evidence upon which the jury could reasonably conclude that the state was able to prove all elements of the charged offense beyond a reasonable doubt. State v. Stambolia, 11th Dist. No. 2003-T0-053,2004-Ohio-6945, at ¶ 42. In applying the foregoing standard, an appellate court, "* * * reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v.Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 45} Although this court has the ability under Thompkins to "sit" as a thirteenth juror in a case and disagree with the jury's resolution of a factual conflict, the basic question of the credibility of a witness is primarily questions for the trier of fact. State v. Russell (Dec. 15, 1995), 11th Dist. No. 93-T-4890, 1995 Ohio App. LEXIS 5553, at 11, citingState v. DeHass, (1967), 10 Ohio St.2d 230, 277. In regard to witness credibility, this court has further concluded that the jury is not required to believe or disbelieve all aspects of a witness' testimony; i.e., the jury is allowed to believe one aspect while disregarding other aspects of the testimony. See State v. Boczek (Dec. 17, 1999), 11th Dist. No. 98-L-188, 1999 Ohio App. LEXIS 6129.
 {¶ 46} As was noted above, our review of the trial transcript shows that appellant was able to establish a number of inconsistencies regarding the victim's trial testimony. For example, appellant presented evidence which tended to show that the victim could not accurately remember which days she had gone to school during the week that her mother was away. However, in light of the fact that the victim was only thirteen years old at the time that the sexual contact took place, it is our view that her testimony was not so inconsistent that it was entirely unbelievable. Furthermore, there were certain aspects of the victim's testimony as to the first sexual contact which made it somewhat more believable than the remainder of her testimony. As to this point, we would note that, while the victim asserted that her mother and brother were in the residence when many of the other offenses allegedly took place, she asserted that they were not at home when the first offense occurred.
 {¶ 47} If the jury accepted appellant's argument that the victim had fabricated the entire story against him because he had left her mother for a new girlfriend, it would have been illogical for the jury not to reject the victim's entire testimony. On the other hand, if the jury merely concluded that the victim's testimony as to the other alleged offenses was too confusing to establish appellant's guilt beyond a reasonable doubt, it still could have accepted the aspect of her testimony pertaining to the first offense. Under the latter scenario, the jury would not have lost its way in weighing the evidence before it in the instant case.
 {¶ 48} Considered as a whole, the victim's testimony as to the first incident of sexual contact constituted substantial evidence upon which a jury could properly find that all elements of gross sexual imposition had been demonstrated. Thus, since the jury verdict was not against the manifest weight of the evidence, the second assignment in this appeal is not well-taken.
 {¶ 49} Because appellant has failed to demonstrate any error in the underlying criminal proceeding, the judgment of the Lake County Court of Common Pleas is affirmed.
Grendell, J., Rice, J., concur.