In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-06-207 CR


____________________



KENNETH LEE TYLER, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 03-07-05526-CR






MEMORANDUM OPINION


 At the first trial of a two-count indictment, a jury acquitted Kenneth Lee Tyler of
possession of pseudoephedrine with intent to manufacture methamphetamine, and failed to
reach a verdict on a charge of possession of methamphetamine in an amount of 400 grams
or more. On retrial for possession of methamphetamine, and over the appellant's running
objection to any manufacturing evidence, the trial court admitted evidence regarding the
operation of a methamphetamine laboratory in the appellant's home. The jury convicted
Tyler of possession of methamphetamine and the trial court assessed a fifteen-year sentence. 
In two appellate issues, Tyler contends: (1) the trial court erred in failing to grant a new trial
because evidence from the prior acquittal was introduced into evidence; and (2) excluding
the manufacturing evidence from review, that the evidence is insufficient to support the
jury's verdict that Tyler possessed 400 grams or more of methamphetamine. Tyler maintains
he is entitled to a new trial, and that on retrial he may be tried only for possession of
methamphetamine in an amount of one gram or more but less than four grams. We affirm
the conviction but remand the case to the trial court for imposition of the mandatory fine.

 This appeal challenges a conviction for possession of methamphetamine. See Tex.
Health & Safety Code Ann. § 481.115(a), (f) (Vernon 2003). In the previous trial, Tyler
was acquitted of the second-degree felony offense of possession of an immediate precursor,
pseudoephedrine, with intent to manufacture methamphetamine. See Act of May 22, 2001,
77th Leg., R.S., ch. 1188, § 7, sec. 481.124, 2001 Tex. Gen. Laws 2691, 2691-92 (amended
2003, 2005) (current version at Tex. Health & Safety Code Ann. § 481.124(a)(2), (d)(1)
(Vernon Supp. 2006)). Manufacture of methamphetamine is a separate offense for which
Tyler has been neither indicted nor acquitted. See Tex. Health & Safety Code Ann.
§ 481.112(a), (f) (Vernon 2003). The State offered the evidence of the manufacturing facility
as extraneous offense evidence relevant to prove knowing possession of methamphetamine.
See Tex. R. Evid. 403, 404(b). Tyler contends the State is collaterally estopped from using
this evidence because the jury in the previous trial determined the evidence of manufacturing
methamphetamine to be insufficient to find guilt beyond a reasonable doubt.

 Collateral estoppel "means simply that when an issue of ultimate fact has once been
determined by a valid and final judgment, that issue cannot again be litigated between the
same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 25
L.Ed.2d 469 (1970). To determine whether collateral estoppel bars a subsequent prosecution,
or permits prosecution but bars relitigation of certain specific facts, we must determine: "(1)
exactly what facts were 'necessarily decided' in the first proceeding; and (2) whether those
'necessarily decided' facts constitute essential elements of the offense in the second trial." 
Ex parte Taylor, 101 S.W.3d 434, 440 (Tex. Crim. App. 2002). A defendant cannot obtain
appellate review of the trial court's rejection of a collateral estoppel claim if, in the second
proceeding, he fails to introduce a record of the first proceeding and to include that record
on appeal. Guajardo v. State, 109 S.W.3d 456, 457 (Tex. Crim. App. 2003); see also
Dowling v. United States, 493 U.S. 342, 350-52, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). 
Because the record of Tyler's first trial was neither introduced at trial nor made a part of the
appellate record, the record does not support Tyler's collateral estoppel claim. We overrule
issue one.

 In his second issue, Tyler contends he should be acquitted of possession of 400 grams
or more of methamphetamine because the evidence is factually insufficient to support the
jury's verdict on the amount of methamphetamine he possessed. Tyler contends that we
should exclude all evidence of manufacturing from our analysis under the standard of review
articulated in Clewis v. State and Johnson v. State and remand the case for a new trial on
possession of methamphetamine in an amount of one gram or more but less than four grams. 
See Johnson v. State, 23 S.W.3d 1, 6-7 (Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996). In a factual sufficiency review, we view all the evidence
in a neutral light and determine whether the evidence supporting the verdict is so weak that
the jury's verdict is clearly wrong and manifestly unjust or whether the great weight and
preponderance of the evidence is contrary to the verdict. Johnson, 23 S.W.3d at 6-7; Clewis,
922 S.W.2d at 134; see generally Watson v. State, 204 S.W.3d 404 (Tex. Crim. App. 2006).

 In this case, Lieutenant Phillip Cash testified that for several years he had been
investigating Tyler in connection with manufacturing methamphetamine and that on February
14, 2003, sheriff's department officers executed a search warrant on Tyler's residence. Tyler
was in a bathroom inside the house, smoking a cigarette. Tyler had a cigarette box
containing methamphetamine in his coat pocket. The manufacturing facility utilized the
entire residence. Tyler's body "reeked of chemicals." He was decontaminated at the scene
and his clothing destroyed.

 The substance recovered from Tyler's pocket contained 2.22 grams of a brown
powder containing methamphetamine and pseudoephedrine. Two bottles of liquid containing
a solution of methamphetamine and pseudoephedrine weighing 163.35 grams and 266.76
grams were found on the porch. Filter papers seized in the raid contained solid substances
consisting of 0.25 and 0.76 grams of methamphetamine and pseudoephedrine.  The chemist
who testified for the State explained that the pseudoephedrine was not completely converted
because the reaction was not carried out under the correct environment. Some
pseudoephedrine did not react and remained in the final product. The State also presented
evidence that the deputies seized six unused packages of pseudoephedrine on the pool table. 
On the floor in the kitchen closet, they found a jar containing 435.87 grams of
pseudoephedrine powder. A baggie held 0.85 grams of methamphetamine.

 Tyler claimed he injured his leg and someone named Tim Robinson stayed at Tyler's
house while Tyler recuperated at the home of his adopted daughter. Tyler professed to
having no prior knowledge that Robinson was manufacturing methamphetamine at Tyler's
house. Tyler testified that he picked up a bag of methamphetamine that was on the pool table
and put it in his pocket. He admitted that he suspected the substance in the bag was
methamphetamine, and that he knew that methamphetamine was being manufactured in his
house. According to Tyler, he did not perceive the methamphetamine to be his, although he
put it in his pocket. Tyler admitted he was under the influence of methamphetamine when
he was arrested. Tyler also admitted to reeking of chemicals, but claimed they spilled on him
during his arrest.

 The police did not recover Tyler's fingerprints from the residence but did recover the
fingerprints of Tim Robinson and one other person. Tyler's personal effects were recovered
from the residence, including a motorcycle helmet with his name on it, mail, and a
photograph of his daughter. Clothing in Tyler's size and his personal mail were found in an
upstairs bedroom. Lieutenant Cash had known of Tyler since 1997, and had always known
this to be his house. According to Tyler, all of his possessions were in the house but he was
not living there. Lieutenant Cash testified that an old van on the premises held numerous
laboratory components that appeared to have been used in methamphetamine manufacture
in the past. At the back of the property they discovered a large burn pile of solvent cans and
other laboratory trash.

 We understand Tyler's argument to be that his prior acquittal for possession of
pseudoephedrine with intent to manufacture methamphetamine renders all the evidence
connected to the manufacturing operation too weak to support the jury's verdict on
possession of methamphetamine. See generally Moff v. State, 131 S.W.3d 485, 489-90 (Tex.
Crim. App. 2004) (holding the appellant who procedurally defaulted on the admissibility of
evidence may challenge the sufficiency of that evidence to support the verdict). We note,
however, that Tyler was not, as he repeatedly insists in his brief, acquitted of manufacturing
methamphetamine. The jury in the previous trial acquitted Tyler of possession of
pseudoephedrine. Furthermore, Tyler did not place the record of the first trial into evidence
in the second trial, so we cannot determine what evidence the State relied upon to seek a
conviction, or what facts the jury necessarily decided against the State. We can only
speculate whether the State sought a conviction for possession of the pseudoephedrine
packages on the pool table, for possession of the jar of pseudoephedrine found on a closet
floor, for possession of the pseudoephedrine contained in the methamphetamine solution, or
for possession of the pseudoephedrine mixed in the methamphetamine found in Tyler's
pocket. (1) We decline to speculate what facts were necessarily decided by the jury in the first
trial.

 The record contains some evidence that Tyler happened to arrive at his residence after
months away, unwittingly stumbled into a massive methamphetamine laboratory, put some
of the product into his pocket out of curiosity, then took a smoke break in the bathroom
without knowingly exercising control over the jars of methamphetamine that were sitting on
his porch. That evidence is not so overwhelming that we must conclude that the great weight
of the evidence preponderates against guilt. Likewise, only 2.2 grams of methamphetamine
were actually on Tyler's person and he was not found in the room where the officers found
400 grams of methamphetamine solution. That evidence is not so weak as to compel us to
conclude that the verdict is clearly wrong and unjust. Tyler admitted that he exercised
control over the 2.2 gram parcel of methamphetamine by picking it up and putting it in his
pocket. The jury could infer from Tyler's knowing exercise of direct control over the 2.2
gram package that Tyler likewise knowingly exercised control over the larger containers of
methamphetamine in Tyler's home.

 A jury in a previous trial acquitted Tyler of possessing pseudoephedrine with intent
to manufacture methamphetamine. From this record we cannot determine what facts were
necessarily decided in the first trial. The mere fact of a prior acquittal for a different offense
and a hung jury for the charged offense at an earlier trial does not render the evidence
supporting this jury's verdict insufficient. We find the evidence linking Tyler to over 400
grams of methamphetamine in his house to be factually sufficient to support the verdict of
the jury, and overrule issue two.

 Tyler stands convicted of possession of a controlled substance, methamphetamine, in
an amount of 400 grams or more. The offense is an aggravated first degree felony. See Tex.
Health & Safety Code Ann. § 481.115(a), (f). This offense is "punishable by
imprisonment in the institutional division of the Texas Department of Criminal Justice for
life or for a term of not more than 99 years or less than 10 years, and a fine not to exceed
$100,000. . . ." Tex. Health & Safety Code Ann. § 481.115(f). The fine is mandatory.
Land v. State, 890 S.W.2d 229, 234 (Tex. App.--Beaumont 1994, no pet.). We cannot add
punishment to an incomplete verdict. Young v. State, 922 S.W.2d 676, 678 (Tex. App.--Beaumont 1996, pet. ref'd). If the court of appeals awards a new trial to a defendant only
on the basis of an error made in the punishment stage of the trial, "the cause shall stand as
it would have stood in case the new trial had been granted by the court below, except that the
court shall commence the new trial as if a finding of guilt had been returned and proceed to
the punishment stage of the trial. . . ." Tex. Code Crim. Proc. Ann. art. 44.29(b) (Vernon
2006). Accordingly, we affirm the judgment as to guilt, reverse the judgment as to
punishment only, and remand the cause to the trial court for assessment of punishment.

 REVERSED AND REMANDED AS TO PUNISHMENT ONLY.






 ______________________________

 STEVE McKEITHEN

 Chief Justice


Submitted on May 15, 2007

Opinion Delivered August 15, 2007

Do Not Publish


Before McKeithen, C.J., Gaultney and Horton, JJ.
1. On retrial, the State did not attempt to obtain a conviction for possession of another
quantity of pseudoephedrine for which it could have but did not seek a conviction in the first
trial. To have done so would have raised other issues not relevant to our analysis here.