*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MOHAMED NADIR BOUKHATMI,

Defendant-Appellant.

FOR PUBLICATION
April 4, 2024
9:20 a.m.

No. 363998
Kent Circuit Court
LC No. 21-004765-FC

Before: SWARTZLE, P.J., and REDFORD and YATES, JJ.

SWARTZLE, P.J.

A jury convicted defendant of one count of engaging in sexual contact with his daughter, RB, when she was under the age of thirteen. Defendant does not challenge that verdict on appeal, but maintains that the trial court violated his due-process rights at sentencing by considering acquitted conduct in its scoring decision. Because we agree with defendant that the trial court erroneously concluded that his conviction was part of felonious criminal activity involving three or more crimes against RB under Offense Variable (OV) 13, we vacate defendant's sentence and remand for resentencing consistent with this opinion.

## I. BACKGROUND

RB disclosed that, after her parents divorced, defendant touched her buttocks and vagina when she and her brother spent parenting time at defendant's apartment. The prosecutor charged defendant with four felonies that occurred "on or about" March 1, 2021, including three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); MCL 750.520b(2)(b) (sexual penetration with a person under 13 years of age by a person over 17 years of age); and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a); MCL 750.520c(2)(b) (sexual contact with a person under 13 years of age by a person over 17 years of age). The prosecutor subsequently filed an amended felony information charging defendant with two counts of CSC-I and two counts of CSC-II for offenses alleged to have occurred on or about March 1, 2021. Shortly thereafter, the prosecutor filed a second amended felony information charging defendant with two counts of CSC-I and two counts of CSC-II, and alleging that the offenses occurred "on or about" March 1 to March 15, 2021.

-1-

RB testified at the preliminary examination, during which she offered several statements about when and how many times defendant touched her vagina or buttocks. RB testified at different points of the proceeding that defendant first touched her in 2019 when she was six years old and that it occurred "[m]ore than one time," "a couple of times," "maybe" ten times, and "[s]ometimes." RB also offered varying statements about when defendant last touched her, first stating that the last incident happened in 2020 or 2021, then testifying that she did not remember what occurred, but she remembered that the last incident occurred in 2019.

At defendant's subsequent trial, RB's testimony about the number of times defendant touched her and when the touching occurred was similarly equivocal. RB and her brother visited defendant at his apartment periodically between August 2019 and March 15, 2021. When the prosecutor asked how many times defendant "ever" touched her vagina or buttocks, RB testified at different points that it happened three times, "a couple of times," and more than one time. When asked when it first happened, RB said she was seven or eight years old, and when asked when it last happened, RB testified she was eight years old. Later, RB testified that she did not remember the last time defendant touched her or what day it occurred.

Critically for purposes of this appeal, despite the prosecutor's decision to limit the four charges to defendant's conduct from March 1 to March 15, 2021, the case was submitted to the jury without any party argument or court instruction that the jury must only consider defendant's conduct within that two-week period of time. The jury did not receive a copy of the second felony information, nor did the verdict form indicate a particular date range. In fact, during deliberations, the jury sent a question to the trial court asking what the difference was between the two sets of identical counts, and the trial court explained that the counts alleged offenses that occurred on separate occasions, with no dates specified.[1] Indeed, the only significance attached to March 2021 in the trial record is that RB last visited defendant on March 15, 2021.

The jury convicted defendant of one charge of CSC-II and acquitted him of the other three charges.

At defendant's sentencing for his lone CSC-II conviction, the prosecutor argued that OV 13 should be scored at 25 points because "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). Under MCL 777.43(2)(a), the trial court could consider all crimes within a five-year period, including the sentencing offense. The prosecutor emphasized that defendant was charged for conduct from March 1 to March 15, 2021 and, therefore, defendant was convicted of CSC-II for sexual contact with RB during that date range. The prosecutor also emphasized that, although defendant had been

---

[1] The jury question and answer are not found in the trial transcript, though both parties on appeal include the detail in their recitation of the background. It is not particularly surprising that the question and answer are not part of the transcript, as it is not uncommon for a jury question to be answered promptly, but at a time when a court reporter may be not be available. In any event, when this specific matter was raised by defense counsel at sentencing, the trial court did not suggest that counsel was mistaken, a reaction we would expect if, in fact, the question and answer had not actually taken place.

acquitted of three CSC counts, those counts related solely to conduct that occurred within that same March 2021 time period.

Given this, according to the prosecutor, the trial court could consider any conduct by defendant before March 2021 in scoring OV 13 because it would not be "acquitted conduct" under *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019). In the prosecutor's view, that would mean, for example, that the trial court could consider RB's testimony that defendant touched her vagina or buttocks when she was seven or eight years old because, if a preponderance of evidence showed that defendant did so when RB was seven, the conduct would have occurred prior to March 2021. Defendant opposed the prosecutor's proposed scoring of OV 13, arguing that such scoring would violate *Beck*.

The trial court agreed with the prosecutor that OV 13 should be scored at 25 points and explained its rationale as follows:

> [G]iven the testimony by the victim at the prelim, that there was multiple sexual contacts from the time that she was six-years-old up until eight-years-old, that obviously that conduct will not result in—or has not resulted in a conviction. However, can still be considered by the Court. And, I think the fact that—that there was testimony and that [defendant] was convicted, that that does provide at least to my satisfaction a preponderance that it's likely that other—other events occurred, or other offenses occurred, especially since it was reported and testified to by the victim in this case.

Although somewhat difficult to parse, the trial court appears to have reasoned that RB testified at defendant's preliminary examination that sexual contact occurred more than once between 2019, when she was six years old, and 2021, but that defendant was not convicted for those sexual contacts. The trial court then concluded that, because the jury convicted defendant of one count of CSC-II, it is likely that other sexual contacts occurred that RB referenced in her disclosure of and testimony about defendant's conduct.

With an OV 13 score of 25 points, defendant's total OV score was 70 points. Because the trial court scored defendant's Prior Record Variables (PRVs) at zero points, defendant's minimum sentencing guidelines range for CSC-II as a Class C felony, was 19 to 38 months in prison. The trial court sentenced defendant to 3 to 15 years in prison, which was at the high end, but within the guidelines, as scored. Had the trial court set OV 13 at zero points, defendant's total OV score would have been 30 points, and his minimum sentencing guidelines range for CSC-II as a Class C felony would have been 10 to 19 months in prison. MCL 777.64.

Defendant appealed his sentence.

## II. ANALYSIS

On appeal, we review the trial court's factual determinations at sentencing for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Antwine*, 293 Mich App 192, 194; 809 NW2d 439 (2011) (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the

-3-

scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

This case involves another application of our Supreme Court's holding in *Beck*, 504 Mich at 609, that "[o]nce acquitted of a crime, it violates due process to sentence the defendant as if he committed that very same crime." In *Beck*, a jury convicted Eric Beck of second-offense felony-firearm and felon-in-possession of a firearm, but acquitted him of open murder, carrying a firearm with unlawful intent, and two felony-firearm charges for those offenses. *Id*. at 610. The trial court sentenced Beck to five years in prison for second-offense felony-firearm, and to a consecutive sentence of 20 years in prison for the felon-in-possession, even though the minimum guidelines range for felon-in-possession was 22 to 76 months. *Id*. In part, the trial court exceeded the guidelines range because, although the jury acquitted Beck of open murder, some evidence at trial suggested that defendant may have been the person who shot the victim. *Id*. The trial judge reasoned that, although the jury may have concluded that the prosecutor failed to prove Beck guilty beyond a reasonable doubt, the standard to find facts in support of a sentence is a preponderance of the evidence. *Id*. Because the trial court concluded that a preponderance of evidence showed that Beck shot and killed the victim, it considered those facts during Beck's sentencing. *Id*. at 612.

Beck challenged the constitutionality of the trial court's consideration of those facts at sentencing and, in analyzing the issue, the *Beck* Court considered the United States Supreme Court's opinions in *McMillan and Dowling v United States*, 493 US 342, 349; 110 S Ct 668; 107 L Ed 2d 708 (1990) and *United States v Watts*, 519 US 148; 117 S Ct 633; 136 L Ed 2d 554 (1997). In *McMillan*, the Supreme Court upheld as constitutional a state statute that allowed a sentencing court to impose an additional five-year sentence if the court found, by a preponderance of evidence, that the defendant visibly possessed a firearm during the crime. *Beck*, 504 Mich at 615. Our Supreme Court in *Beck* found *McMillan* inapplicable to Beck's appeal because *McMillan* addressed uncharged conduct, not acquitted conduct, *McMillan* was substantially overruled by *Alleyne v United States*, 570 US 99; 133 S Ct 2151; 186 L Ed 2d 314 (2013), and *McMillan* did not address a defendant's due-process and jury-trial rights. *Id*. at 623.

In *Watts*, the Supreme Court ruled that it does not violate double-jeopardy principles for a sentencing court to rely on acquitted conduct if proved by a preponderance of evidence. *Id*. The *Beck* Court found *Watts* inapplicable to Beck's appeal, however, because the Supreme Court subsequently clarified that *Watts* only addressed the use of acquitted conduct for double-jeopardy purposes. *Beck*, 504 Mich at 624-625. Further, in *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), the Supreme Court ruled that due process requires that a jury find facts were proved beyond a reasonable doubt if the sentencing court relies on those facts to impose a penalty greater than the statutory maximum. *Beck*, 504 Mich at 616.

Citing decisions from other state courts as well as "the volume and fervor of judges and commentators who have criticized the practice of using acquitted conduct as inconsistent with fundamental fairness and common sense," the *Beck* Court ruled that a defendant is presumed innocent of acquitted conduct and reliance on that conduct for sentencing purposes violates a defendant's due-process right to a fair trial under the Fourteenth Amendment. *Id*. at 626-627; US Const, Am XIV. Applying that reasoning, our Supreme Court vacated Beck's sentence and remanded for resentencing because, although a jury found that the prosecutor failed to prove murder beyond a reasonable doubt, the sentencing court relied on its own finding that Beck

murdered the victim to increase Beck's sentence for the felon-in-possession conviction. *Id*. at 629-630.

In *People v Brown*, 339 Mich App 411; 984 NW2d 486 (2021), this Court applied our Supreme Court's ruling in *Beck* and vacated Curtis Brown's sentence for felon-in-possession of a firearm. Although a jury acquitted Brown of second-degree murder and voluntary manslaughter based on Brown's defense of self-defense, the trial court sentenced Brown above the recommended guidelines range for his felon-in-possession conviction based, in part, on Brown's involvement in the victim's death. *Id*. at 416-418. The trial court in *Brown* reasoned that it was not considering acquitted conduct but that, among other things, it was indisputable that the victim would not have died if Brown had not shown up to a confrontation outside a barber shop with a gun, Brown knew it was likely he would use the gun during the fight, and he cocked the gun to prepare for the confrontation. *Id*. at 418. The trial judge emphasized that he was not punishing Brown for the victim's death, but was putting Brown's felon-in-possession charge "in context" to determine his sentence. *Id*. at 419. Although Brown's minimum advisory sentence range was 9 to 46 months in prison, the trial court sentenced Brown to a term of 84 to 250 months in prison for the felon-in-possession conviction. *Id*. at 417, 419.

Brown argued on appeal that the trial court based its scoring decision on acquitted conduct which violated his due-process rights under *Beck*. *Brown*, 339 Mich App at 419. In considering the issue in light of *Beck*, this Court noted the distinction our Supreme Court made between acquitted conduct—conduct a jury has determined the prosecutor failed to prove beyond a reasonable doubt—and uncharged conduct—conduct about which the jury has made no finding. *Id*. at 419-420. The Court further observed that the rule announced in *Beck* is often easier stated than applied. *Id*. at 421. Because a jury's acquittal is a "legal term of art based on evidentiary absence or negation," the Court explained how trial courts should apply the rule to specific facts. *Id*. at 423. The Court concluded that sentencing courts should use a test akin to the rational-jury standard employed in double-jeopardy cases, which requires an examination of the record to determine whether the jury grounded its verdict on conduct the trial court deemed relevant at sentencing—i.e., "the focus would be on the grounds that the parties actually put in dispute at trial." *Id*. at 423-424. As explained in *Brown*:

> [U]nder the rational-jury approach, the sentencing court could consider facts and circumstances that were not, in a practical sense, put in dispute at trial, as long as those facts and circumstances were otherwise consistent with the jury's acquittal on a particular charge. Moreover, if a specific fact or circumstance was relevant to both the acquitted charge and the convicted charge—i.e., if there was an overlap of relevant conduct—then the trial court could consider that fact or circumstance when sentencing on the convicted charge. This rational-jury standard appears to be consistent with *Beck* and its progeny, and it is a workable standard that trial courts can use when sentencing a defendant who was convicted of a particular charge but also acquitted of another related charge. [*Id.* at 425.]

Applying this test, the Court ruled that the standard required it to vacate Brown's sentence for his felon-in-possession conviction because, although the sentencing court could consider that Brown knew that he could not possess a firearm as a convicted felon, much less carry that firearm in public, and although Brown knew that he was bringing a gun to a fistfight and even chambered

a round before he arrived at that fight, the conduct for which Brown could be sentenced ended there. *Id*. at 426. Indeed, notwithstanding that Brown conceded that he shot the victim, the sentencing court could not consider that fact or that the shot caused the victim's death because Brown was acquitted of that conduct. *Id*. at 427.

Applying *Beck* and *Brown* to this case, we are similarly compelled to vacate defendant's sentence and remand for resentencing. Under *Brown*'s rational-jury standard, we look at the conduct actually disputed at trial to determine the basis of the jury's acquittal and whether the evidence the trial court considered at sentencing was consistent with that acquittal. *Id*. at 423-425. In beginning our rational-jury analysis, we note that the trial court found persuasive RB's preliminary-examination testimony about defendant's conduct. Considering evidence presented at a preliminary examination is generally permissible at sentencing, *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015), but, much like RB's trial testimony, RB offered varying assertions at the preliminary exam about when and how many times defendant touched her vagina or buttocks. Moreover, to the extent that preliminary-examination testimony would fall within the scope of evidence of acquitted conduct if it had been offered at trial, such testimony would be precluded from consideration at sentencing under *Brown*'s rational-jury standard.

Looking to what the parties actually put in dispute at trial, defendant never admitted touching RB inappropriately—thus, essentially all alleged acts of sexual touching were put at issue at trial. On appeal, the prosecutor tries to limit this "scope of dispute" by pointing out that defendant was only charged with unlawful conduct from March 1 to March 15, 2021. Evidence of any act that took place prior to March 1, 2021, would be evidence of "uncharged conduct" under *Beck*, according to the prosecutor.

The fatal flaw in the prosecutor's argument, however, is that the jury was never told or instructed that any acts before March 1, 2021, constituted "uncharged conduct" or were otherwise off-limits with respect to the four counts. Although the felony information charged defendant for conduct between March 1 to March 15, 2021, the prosecutor did not tell the jury that any date range applied to any of the CSC charges. The prosecutor did not mention the March 2021 date range in her opening or closing arguments, she did not ask the trial court to instruct the jury that it must consider only what occurred during the first two weeks of March 2021, and she did not send a copy of the charging document to the jury for its deliberations. Most importantly, the prosecutor did not elicit testimony or present other evidence about defendant's conduct during the March 2021 timeframe.

To the contrary, the prosecutor asked RB whether defendant "ever" touched her during parenting time visits, if she remembered what year defendant touched her, and if she knew how old she was when the touching occurred. Because RB's allegations involved conduct that occurred during parenting time at defendant's apartment, the only temporal bookends the jury had in deciding defendant's guilt were that defendant moved into the apartment in August 2019, and RB and her brother last visited defendant at his apartment on March 15, 2021. This was more than a mere oversight by the prosecutor to emphasize the two-week period listed in the information; it amounted to an affirmative decision to adjudicate RB's allegations of CSC between August 2019 and March 15, 2021. In the words of *Brown*, the prosecutor "actually put in dispute at trial" the entire time period of August 2019 to March 15, 2021, not just the final two weeks. Thus, so far as

the jury was concerned, it could consider evidence of any sexual acts for purposes of the charges, regardless of date.

The jury acquitted defendant of all but one instance of sexual contact involving RB at any point during parenting-time visits with defendant, and the evidence presented to the jury showed that the time period when such visits occurred was August 2019 to March 15, 2021. Thus, in line with *Beck* and *Brown*, for purposes of defendant's sentence, (i) the jury found only one instance of CSC-II occurred, and (ii) the jury rejected the prosecutor's argument that three other CSC crimes occurred. Because the prosecutor lacked sufficient evidence to convict defendant of any instance of CSC other than one count of CSC-II, the trial court could not find that defendant committed three or more CSC crimes against RB to increase his punishment under OV 13. Doing so was precisely what *Beck* forbade—it punished defendant as though he were convicted of four counts of CSC, when he was convicted of one count and acquitted of three.

As previously noted, had the trial court scored OV 13 at zero points, defendant's minimum sentencing guidelines range would have been 10 to 19 months. The trial court sentenced him above this range, and therefore we must vacate his sentence and remand for resentencing.

## III. CONCLUSION

As *Beck* and *Brown* instruct, a trial court cannot accept at sentencing what the jury rejected at trial, even when sussing out what precisely the jury rejected is not always straightforward. Because the trial court violated defendant's due-process rights by impermissibly considering acquitted conduct to increase his punishment at sentencing, we vacate defendant's sentence and remand for resentencing. We do no retain jurisdiction.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Christopher P. Yates